GEORGE ECONOMOPOULOS *vs.* A. G. POLLARD COMPANY.

Middlesex. March 2, 1914. — June 17, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & CROSBY, JJ.

*Slander,* Publication.

In an action against the proprietor of a department store for slander, in accusing the plaintiff of the crime of larceny, there was evidence tending to show that the plaintiff, who could understand or talk little if any English, was addressed in English by a clerk, when no one else was within hearing, and was asked "if he didn't want to pay for what he had taken," that, the plaintiff not understanding, the clerk called a Greek clerk to whom he said in English, referring to the plain-

tiff, "I think he has taken a handkerchief. . . will you speak to him?" that the Greek clerk said to the plaintiff in Greek, "This gentleman here accuse you that you steal a handkerchief." The plaintiff testified that there "were fifty or sixty men around there." There was no evidence that any one other than the plaintiff and the Greek clerk understood the Greek language. *Held,* that, assuming, without deciding it, that the words spoken could have been found to have been accusations of larceny, there was no evidence warranting a finding of their publication.

Defamatory words, spoken in a foreign language in the presence of third persons, are not actionable if they are comprehensible only to the person using them and the person accused.

TORT against a corporation maintaining a department store in Lowell, the declaration alleging in the first and second counts that servants and agents of the defendant assaulted and illegally detained the plaintiff, and in a third count that they falsely and maliciously charged the plaintiff with the crime of larceny, saying, "You have stolen a handkerchief from us, and have it in your pocket." Writ dated December 15, 1911.

In the Superior Court the case was tried before *McLaughlin,* J. The testimony of the plaintiff, who could understand or talk little if any English, was as follows upon the issue of the slander alleged in the declaration: He had entered the defendant's store for the purpose of examining and purchasing goods. "Before I went two steps a hand grabbed me and I asked 'What is the matter?' He didn't give me no answer but called with the hand (indicating) to some other to come. I didn't understand what he said nor what language he spoke. He did not speak in Greek. There came a man to the men who were holding me and they were in conversation in English which I didn't understand. The Greek clerk (Miralos) said to me, 'This gentleman here accuse you that you steal a handkerchief and that you have it in your possession.' This is what the Greek salesman said to me. 'You have a handkerchief and have it in your possession, you steal it.' . . . There were fifty or sixty men around there."

The testimony of Joseph Carrier, a clerk of the defendant, on the same subject was as follows: "There wasn't anybody else around there when I came to where he was excepting him. I asked him if he did n't want to pay for what he had taken. I got no reply from him and I sent for the young Greek clerk (Miralos) and told him what I had seen. The Greek clerk talked Greek, which I could not understand. . . . Two women went by. . . .

When Miralos came up I said to him, 'I think he has taken a handkerchief from that box, will you speak to him?' And George (Miralos) spoke to him. I called his attention that I thought the man (the plaintiff) had taken the handkerchief in these words: 'I think that man has taken a handkerchief, ask him about it.'"

The testimony of George Miralos, the Greek salesman, on the same subject was as follows: "Mr. Carrier called me and I came nearer and he say, 'Ask this man if he took any handkerchief from this box that he did not pay for?' I asked him if he took any handkerchief from this box and he say 'Search me.' . . . Mr. Joe Carrier told me all about it. I say, 'You know what he said?' Well, he say, 'Yes, he says I take a handkerchief,' and he opened his coat and he say 'Search me.'"

At the conclusion of the evidence the plaintiff asked the judge to rule as follows: "If the salesman of the defendant (Carrier) acting in the belief that he was protecting the property of his employer, falsely and publicly accused the plaintiff of theft, in any words conveying that plain meaning, his act was that of his employer and makes the employer liable for all injuries to the plaintiff resulting naturally from his words."

The judge refused to give the ruling asked for, ruled that there was no evidence for the jury on the third count, and submitted the case to the jury on the first two counts only. The jury found for the defendant; and the plaintiff alleged exceptions.

*W. H. Bent,* for the plaintiff.

*F. N. Wier,* (*J. M. O'Donoghue* with him,) for the defendant.

Loring, J. We do not find it necessary to decide whether the two statements relied on by the plaintiff could have been found to be accusations of larceny. If it be assumed that such a finding could have been made, the judge was right in directing the jury to find a verdict for the defendant because there was no evidence of publication of either of them. See *Downs* v. *Hawley,* 112 Mass. 237; *Rumney* v. *Worthley,* 186 Mass. 144. There was no evidence that anybody but the plaintiff was present when Carrier spoke to the plaintiff in English. There was no publication of this statement made in English, because on the evidence the words could not have been heard by any one but the plaintiff. *Sheffill* v. *Van Deusen,* 13 Gray, 304.

Nor was there any evidence of publication of the Greek words spoken by Miralos. For, although there was evidence that they were spoken in the presence of others, there was no evidence that any one could understand them but the plaintiff. *Sheffill* v. *Van Deusen, ubi supra,* at page 305, and cases cited.

Under these circumstances we do not have to consider the question whether Carrier and Miralos could have been found to be acting within the scope of their employment by the defendant in making the two statements relied upon, as to which see *Kane* v. *Boston Mutual Life Ins. Co.* 200 Mass. 265, 269.

*Exceptions overruled.*