No. 20,601.

CARL A. SCRIVEN, *Appellant*, v. THE CITY OF LEBANON et al., *Appellees.*

SYLLABUS BY THE COURT.

OCCUPATION TAX—*Void Ordinance—Injunction.* In a city of the third class having a population of one thousand inhabitants and whose requisite revenues for governmental purposes are $1800 per annum, an occupation tax of $250 per annum on the sale of sweet cider by a keeper of a restaurant and confectionery is unjust, unreasonable and void under the limitations of the city charter act (Gen. Stat. 1909, §§ 1561, 1562; Laws 1915, ch. 151, § 1), and section 5 of article 12 of the state constitution, following *City of Lyons v. Cooper*, 39 Kan. 324, 18 Pac. 296.

Appeal from Smith district court; RICHARD M. PICKLER, judge. Opinion filed January 6, 1917. Reversed.

*L. A. Hasty*, of Belleville, for the appellant.

*F. W. Mahin*, and *I. M. Mahin*, both of Smith Center, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff appeals from a decision of the district court which denied him an injunction to restrain the enforcement of a city ordinance imposing an "occupation tax"

of $250 per annum on all places of business in Lebanon where "cider," "near-beer" or "two per-cent" was kept for sale, sold, bartered or given away.

The plaintiff has conducted a restaurant, confectionery and soda fountain business in Lebanon, a city of the third class, for several years, and sells sweet cider as a part of that business. His sales of cider amount to two kegs per month, and he sells it at five cents per glass. There are thirty glasses in a gallon, which make his total annual receipts $540. This cider costs him $8.40 per keg, or $201.60 per annum, plus the freight, which is not shown.

The legality of this ordinance so far as it seems to countenance the sale of "near-beer" or "two per-cent" is not involved. The plaintiff does not handle these decoctions.

The ordinance in part reads:

"An ordinance providing an occupation tax for all places of business where cider, 'near-beer' or 'two per-cent' may be sold and providing penalties for the violation of the provisions of this ordinance.

"*Be it ordained by the Mayor and Councilmen of the City of Lebanon.*

"SECTION 1. There is hereby levied and assessed against and upon the owner or keeper of any business house or other place where cider, 'near-beer' or 'two per-cent' may hereafter be sold, bartered or given away or kept for sale or barter or to be given away within the corporate limits of the City of Lebanon, Kansas, an occupation tax of two hundred fifty dollars per year, which said tax shall be paid to the Clerk of said city before any of said beverages shall be placed in said building or place for sale, barter or gift.

"SECTION 2. It shall be unlawful for any person, persons, company, firm or corporation to sell, barter or give away any cider, 'near-beer' or 'two per-cent' in any building or other place within the said city of Lebanon or to place or cause to be placed any cider, 'near-beer' or 'two per-cent' in any building or place in said city for the purpose of sale, barter or to be given away, without first having paid to the city clerk of said city the sum of two hundred fifty dollars as an occupation tax, or license, as provided in section one of this ordinance and receive from such city clerk a receipt therefor specifying that such occupation tax or license has been fully paid and setting forth a correct description of the lot, or lots or tract whereon such business is to be carried on and also specifying the term for which such occupation tax or license has been paid.

"SECTION 3. Nothing in this ordinance shall be construed as in any manner authorizing the sale or barter or giving away of any intoxicating liquor."

Plaintiff's petition alleges all the pertinent facts; relates

his prosecution for violation of the ordinance; that he was denied an appeal bond by the police judge; that he was compelled to pay a fine of $25 or go to jail; and is threatened with further prosecutions; and—

"That the ordinance in question in unjust and unreasonable; not a necessary revenue measure; not a proper police regulation; not a justifiable license tax; that it is not a *bona fide* attempt to regulate the occupations named therein, but that it is prohibitive in its operation of the occupations named; that it is contrary to the provisions of the fourteenth amendment to the federal constitution; that it violates the provisions of section 5 of article 12 of the constitution of the state of Kansas and that it is contrary to the statutes of the state of Kansas which delegates the powers which may be exercised by cities of the third class and that it is therefore *ultra vires*."

The plaintiff's evidence supported the facts alleged in his petition; and the parties stipulated—

". . . that the ordinance in question was regularly passed and that the city of Lebanon is attempting to, and is about to proceed to enforce said ordinance against the plaintiff. It is further stipulated and agreed that the population of the city of Lebanon is about one thousand. That the general revenues of the city of Lebanon, outside the roads and streets and sidewalks and outside of the school taxes is about $1800 per year, and that that covers the expenses of the city. Lebanon is a city of the third class."

This ordinance should be considered according to its avowed intent, which is the imposition of an occupation tax of $250 per annum on the business of selling sweet cider in Lebanon. The tax will probably not exhaust every dollar of profit in the year's business, although the freight charges and cost of handling the business are not shown. We are, therefore, unable to say whether the ordinance is absolutely confiscatory under the fourteenth amendment or not. But our own constitution provides:

"Provision shall be made by general law for the organization of cities, towns and villages; and their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, shall be so restricted as to prevent the abuse of such power." (Art. 12, § 5.)

The charter act for cities of the third class (Gen. Stat. 1909, ch. 19) provides:

"The city council shall have authority to levy and collect a license tax on . . . merchants of all kinds, . . . confectioners, restaurants." etc. (Gen. Stat. 1909, § 1561.)

"All license taxes shall be regulated by ordinance; and . . . shall be at such rates per year as shall be just and reasonable," etc. (§ 1562.)

"For the purpose or purposes mentioned in this article, the council or city commissioners, shall have power to enact and make all necessary ordinances, rules and regulations; and they shall also have power to enact and make all such ordinances, by-laws, rules, regulations and resolutions, not inconsistent with the laws of the state, as may be expedient, in addition to the special powers in this section granted for the maintenance of the peace, good government and general welfare of the city, and its trade, commerce and manufactures; and to enforce all ordinances by inflicting fines, forfeitures and penalties upon inhabitants and other persons for the violation thereof, not exceeding one hundred dollars, for any one offense, recoverable with costs of suit, together with judgment of imprisonment until the fine and costs be paid and satisfied; and any person committed for the nonpayment of fine and costs or either, while in custody, may be compelled to work on the streets, alleys, avenues, areas and public grounds of the city under the direction of the street commissioner or other proper officer, and at such rate per day as the council or commissioners may by ordinance prescribe, until such fine and costs are satisfied." (Gen. Stat. 1909, § 1579, as amended by Laws 1915, ch. 151, § 1.)

There can be no doubt that the "occupation tax" in contemplation of this city ordinance of Lebanon is simply a license tax within the meaning of the statutes above quoted. Is a tax of $250 per annum on the right to sell sweet cider in Lebanon a reasonable imposition upon that traffic? The town's entire governmental expenses are $1800 per annum. It is a town of one thousand population. On this one phase of the plaintiff's business he is called on to furnish nearly fourteen per cent of the town's requisite annual revenues. Back in the days when it was lawful under a permit from the probate court for a druggist to sell intoxicating liquors for medicinal and some other restricted purposes, it was held that a city ordinance imposing a tax of $500 on the liquor business of a druggist whose annual gross receipts from liquor sales was $1000 was unjust and unreasonable within the meaning of section 5 of article 12 of the state constitution, and the provisions of the city charter act pertaining thereto. (*City of Lyons v. Cooper*, 39 Kan. 324, 18 Pac. 296.) That case and the one at bar are much alike. Lyons, like Lebanon, was a city of the third class. It had a population of sixteen hundred. Like Lebanon it was a small trading town serving the commercial wants of an agricultural community. Its need for

governmental revenues was small. The business of selling liquors for certain purposes by licensed druggists was then a lawful business, as the sale of sweet cider is yet. The legislative declaration of the entire illegality of the liquor business came later. Perhaps the same legislative denunciation of the sale of sweet cider will follow; but for the present the sale of sweet cider is not illegal. The state law does not denounce it. This Lebanon ordinance does not denounce it. Counsel for the city seek to defend the ordinance as one "regulating the business of selling certain questionable drinks." It does not say so. Any person who can and will pay $250 into the city treasury may sell sweet cider (and some very questionable drinks also), and the ordinance does not manifest any 'interest in the regulatory features of the sale of sweet cider, if there be need for regulation thereof. It does not appear that plaintiff's place of business, or any place in Lebanon where sweet cider is sold, needs and receives any special police attention or other governmental concern which occasions any expense to the city. This court has decided that a city ordinance regulating the sale of cider is valid. (*Monroe v. City of Lawrence,* 44 Kan. 607, 24 Pac. 1113.) But the Lebanon ordinance does not profess to regulate, nor does it purport to suppress it. It merely purports to tax it as a legitimate business, but at a rate far in excess of the financial needs of the city and entirely out of proportion to other legitimate business conducted in that town.

It is urged that the ordinance serves a useful purpose in keeping the cider traffic out of the hands of "bootleggers." Drawing upon our judicial knowledge of that specimen of the *genus homo,* a bootlegger is a person who sells intoxicating liquors on the sly, not from any particular business location, but carrying his wares in his bootleg, in his pockets, or keeping them in some flitting hole-in-the-wall of easy access to himself and provokingly hard of discovery to the officers of the law. When such a person establishes himself in a definite place of business, where by skillful legerdemain he can sell or pretend to sell the innocent juice of the apple as well as beer —both "near" and "far"—and other intoxicants, the niceties of the Kansas language designate him as a "jointist" and no longer in the mere plebeian class of "bootlegger." We do not

see how the ordinance in question could give a bootlegger the slightest inconvenience; but it can readily be discerned that, however laudably intended, it might be used as a subterfuge to license the sale of "near-beer," "two per cent" and other "malt, fermented," etc., liquors which fall under the sweeping ban of our prohibitory law. (Gen. Stat. 1909, § 4361.) But we do not impute any such purpose to this ordinance. We merely seek to show that if we go behind its avowed terms and search for other motives and purposes to justify it, the inferences for evil stick out of it quite as prominently as the inferences for good.

In *City of Emporia v. Railway Co.*, 94 Kan. 718, 147 Pac. 1095, it was said:

"Whether or not an ordinance is void because unreasonable is a question of law (*Lebanon v. Zanditon*, 75 Kan. 273, 89 Pac. 10), and in determining the question of reasonableness ' "The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed are under a solemn duty—to look at the substance of things whenever they enter upon the inquiry whether the [legislature or a city council] has transcended the limits of its authority." ' (*City of Lyons v. Cooper*, 39 Kan. 324, 328, 18 Pac. 296.)" (p. 723.)

But simply adhering to the text and terms of the Lebanon ordinance and holding it to its plain and avowed purpose— to exact a tax of $250 upon the occupation of selling sweet cider in that little city, it must be said that the tax is neither just nor reasonable; that it imposes a burden on the vendor of cider grossly out of proportion to the occupation taxes or other taxes exacted on occupations in Lebanon; that the tax bears no relation to the revenue requirements of the city, and that the ordinance imposing it bears no apparent relation to the subject of regulation, nor does there seem to be any logical relation between the tax and the general subject of regulation. The ordinance transcends the fair scope and intendment of sections 1561 and 1562 of the General Statutes of 1909, section 1 of chapter 151 of the Laws of 1915, and section 5 of article 12 of the state constitution, and is therefore void. The judgment of the district court is therefore reversed and the cause remanded with instructions to enter judgment for the plaintiff.