JOSEPH RICEMAN *vs.* UNION INDEMNITY COMPANY.

Suffolk.   December 15, 1931. — January 25, 1932.

Present: RUGG, C.J., CROSBY, WAIT, SANDERSON, & FIELD, JJ.

*Libel.*

In an action of tort for libel by an attorney against a corporation engaged in the writing of surety insurance, the declaration alleged that the defendant "published at Boston" a letter and report purporting to be "From Boston" and addressed to its surety claim divisions at New York and Kansas City, and stating that two men "along with" the plaintiff called at the defendant's Boston office and "presented the following facts relating to their end of the case": the plaintiff was president and one of the other men was treasurer of a lodge of a fraternal order "and three of them ran a bootlegging enterprise at the Club. . . . they paid a . . . [certain person] to maintain the room to run the bootlegging racket and these slot machines." A demurrer to the declaration was sustained. The defendant did not contend that such statements were not libellous if they referred to the plaintiff. *Held,* that

(1) Even if the letter, because sent only to certain departments of the defendant in the other cities, was not a publication of the libel to a third person, nevertheless, the truth of the allegation in the decla-

ration concerning publication in Boston was admitted upon demurrer, and was a sufficient allegation of publication;

(2) The language used in the letter, taken in its natural and ordinary meaning, was capable of being understood by the average man as meaning that the plaintiff was engaged in or connected with the illegal enterprises described;

(3) The demurrer should have been overruled.

It *was stated* that, with reference to the law of libel, to charge a person with being a "bootlegger" is to charge him with committing an offence against the criminal law.

TORT. Writ dated June 3, 1931.

The declaration is described in the opinion. In the Superior Court, the defendant demurred. The demurrer was heard by *F. T. Hammond*, J., and was sustained. The plaintiff appealed.

*S. R. Cutler*, for the plaintiff.

*F. G. Moulton*, for the defendant.

SANDERSON, J. This is an action for libel brought to this court by appeal of the plaintiff from an order of the Superior Court sustaining the defendant's demurrer to the declaration on the ground (1) that the pleadings do not set out any sufficient legal cause of action and (2) that the written statement alleged to have been made by the defendant and set out in the declaration is not as matter of law sufficient to constitute a libel of the plaintiff by the defendant.

The declaration alleges that the defendant falsely and maliciously wrote and published at Boston of and concerning the plaintiff in a letter and report the words following: "UNION INDEMNITY COMPANY    Cash Capital $2,500,000    Surety    Division of Insurance Securities Company, Inc.    Casualty    To New York    Att.    Mr. Hawley, Surety Claim Division    From Boston    March 2nd, 1931    Kansas City Surety Claim Division, C. L. Barr, Manager, Title & Trust Bldg., Kansas City, Mo.    c/o FRATERNAL ORDER OF EAGLES, Converse Building, Kansas City, Mo.    RE:    Max Beckerman    To FRA-TERNAL ORDER OF EAGLES    *Principal Statement* Mr. Glixman of 54 Summer Street, Revere, and Mr. Max Beckerman of 730 Winthrop Avenue along with Attorney

Joseph Riceman of 294 Washington Street, Boston, called at the office and presented the following facts relating to their end of the case. Riceman was President of the lodge and Beckerman as Treasurer, and three of them ran a bootlegging enterprise at the Club. Two rooms were leased under a straw lease and they paid a John Singer $50. per week to maintain the room to run the bootlegging racket and these slot machines, and they paid rent to the Club for the use of these two rooms. . . . As a matter of fact I questioned them as to the amount of rent paid and the only thing that they wished to say was that they paid $50. per week to a man to take care of the two rooms and run the racket and that the Club did not pay him his salary but he was paid out of the profits of this racket . . . and that this fund was made up and called a Special Fund through which the proceeds of the sale of beer was given, but it had absolutely nothing to do with the function of the Organization that it was a separate enterprise." The plaintiff further alleged that by reason of the false, malicious and defamatory writing he was brought into ridicule and contempt among his associates and friends; that he was deprived of his membership in a fraternal organization, namely, the Fraternal Order of Eagles, and in various other ways was injured and damaged. The declaration closely follows the form for a declaration for libel given in G. L. c. 231, § 147.

The demurrer admits publication in Boston by the defendant. The defendant contends that the declaration does not set out any sufficient publication of the alleged libel. The letterhead of the defendant would seem to indicate that it is engaged in the writing of surety insurance, and the letter appears to have been addressed to the surety claim division of the defendant in New York and to its surety claim division in Kansas City. It purported to state facts presented by the persons speaking "relating to their end of the case." If it be assumed that the letter if sent only to these divisions of the defendant in New York and Kansas City would not be a publication of the alleged libel to a third person, *Economopoulos* v. *A. G. Pollard Co.* 218 Mass. 294, still that would

not justify a publication in Boston and a majority of the court are of opinion that the allegation of publication is sufficient. To say of a person that he is a bootlegger is to charge him with committing an offence against the criminal law. The term has come to denote in the public mind a person who violates the law against the sale of liquor. *Kammerer* v. *Sachs,* 227 N. Y. Supp. 641, 642–643. *State* v. *Stanley,* 38 N. D. 311, 319. *State* v. *Secrest,* 131 Wash. 217, 219. *State* v. *Kenne,* 200 Iowa, 1239, 1240. *Scriven* v. *Lebanon,* 99 Kans. 602, 606. *Commonwealth* v. *Cicere,* 282 Penn. St. 492, 497. In *In re Kirk,* 101 N. J. Law, 450, 453, the court said: "When, therefore, this defendant publicly charged a member of the council, in a public place, with being a bootlegger, he charged him, in legal effect, with being a criminal."

It does not seem to be contended that the plaintiff could not maintain an action for libel if he was charged in the letter with running a bootlegging enterprise or with making a "straw" lease of two rooms, paying rent to the club and paying a man to maintain a room to run a "bootlegging racket and these slot machines," paying him from the proceeds of the sale of beer, but the contention is made that no defamatory statement concerning the plaintiff is made in the letter and that its meaning cannot be enlarged by the allegation that the words were written of and concerning the plaintiff. If the language of the communication in question, taking the words in their natural sense, fairly may bear the meaning that the plaintiff was engaged in or connected with the illegal enterprise to which reference is therein made, the demurrer should have been overruled. "It is only when the court can say that the publication is not reasonably capable of any defamatory meaning, and cannot reasonably be understood in any defamatory sense, that the court can rule, as matter of law, that the publication is not libellous." *Robinson* v. *Coulter,* 215 Mass. 566, 570. *Twombly* v. *Monroe,* 136 Mass. 464, 469.

We are of opinion that the language used taken in its natural and ordinary meaning is capable of being understood by the average man as a personal reflection on the plaintiff's

character.   Two men were present at the interview with the plaintiff, described as an attorney and as president of the lodge, to present facts relating to a "case."   The statement that three of them ran a bootlegging enterprise at the club might be interpreted by the average man to mean that the three men present ran it and not as stating that three other men ran it.   The point made by the defendant that the words used were "three of them" and not "the three of them" might not occur to the man reading the letter.   The letter in stating that the interviewer questioned them might naturally mean to the average man that all three were questioned and all three committed themselves to the propositions which followed.

We are of opinion that a jury could infer that the plaintiff, an attorney, was charged with participating in or being connected with what is described in the letter as a "bootlegging racket" and with the other activities therein alleged, and that it could not be ruled as matter of law that the article was not libellous toward the plaintiff.

*Order sustaining demurrer reversed.*
*Order entered overruling demurrer.*