SAMUEL BANDER *vs.* METROPOLITAN LIFE INSURANCE COMPANY.

Suffolk.   November 12, 1942. — March 1, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, & QUA, JJ.

*Libel and Slander. Evidence,* Conflicting statements of witness, Presumptions and burden of proof, Admissions. *Malice. Practice, Civil,* Entry of verdict under leave reserved. *Damages,* For tort, Special damage. *Words,* "Disgrace."

In an action for slander in charging that the plaintiff was a forger, truth as a defence was not established as a matter of law by admission by the plaintiff that he had testified under oath before a legislative committee that it had been a general practice of agents in a local office of a mutual insurance company, where he was employed, in company elections to sign ballots for policyholders without their consent; that he "would say" that he had engaged in that practice; that part of the ballots would be forged; that "personally" he did not think that he "forged" any ballots; and that he, himself a policyholder, would sign his own name to ballots and put fictitious policy numbers on them.

In an action for slander, the burden on the defendant of proving the defence of truth of statements by the defendant that the plaintiff had been guilty of a certain crime was not sustained by proof that he had been guilty of something perhaps equally bad but substantially different.

In an action against an insurance company for slander in a branch manager's stating at staff meetings of employees that the plaintiff was a forger, a finding, that the plaintiff had maintained the burden of proving actual malice which destroyed a defence of conditional privilege to discuss at such meetings to a reasonable extent and in a proper manner certain testimony of the plaintiff at a legislative hearing, was warranted by evidence of repetition by the manager at three successive

meetings of the staff of the unequivocal charge of forgery and of a charge that the plaintiff had testified at the legislative hearing that he had committed forgery, and that the manager had admitted to the plaintiff that he did not think that the plaintiff had testified to forgery at the legislative hearing.

False statements that a plaintiff had committed the crime of forgery in the service of an insurance company were not privileged as reports of, or fair comments upon, a legislative hearing at which the plaintiff had given equivocal testimony which might be taken as an admission of having committed forgery.

Although an exception by the plaintiff to the entry of a verdict for the defendant under leave reserved following a verdict for the plaintiff was sustained in view of evidence warranting the jury's verdict, the jury's verdict was not restored but a new trial was ordered because of errors at the original trial which might have affected that verdict.

The evidence at the trial of an action for slander against an insurance company showed that a charge by the manager of a branch office of the defendant, that the plaintiff was a "disgrace" to that office, was a component part of statements meaning as a whole that the plaintiff was a forger or "disloyal" and therefore a "disgrace," and such characterization of "disgrace" could not be relied on by itself in a separate count in addition to a count based on the charge of forgery.

A false oral statement that an agent in a branch office of an insurance company was a "disgrace" to the office was not slanderous per se as affecting him in his trade or profession.

A finding, that the plaintiff in an action of slander sustained special damage because he was falsely accused orally of being a "disgrace" as an agent in a branch office of the defendant, was not warranted by evidence that by reason of such charge he became "depressed" and "confined to his bed off and on"; or, in the absence of evidence of efforts made by the plaintiff to obtain employment, by evidence that he was unable to get work because "he had been discharged by the" company "with the record given him" in statements by the office manager containing such charge.

A finding of publication of a libel by an insurance company through its agents acting within the scope of their employment was warranted by evidence that the defendant's superintendent of agencies wrote a letter addressed to the plaintiff discharging him from his employment with the company and containing defamatory matter concerning him, that "when the company made any decision concerning business, the home office had to communicate with the district office," and that the manager of a branch office where the plaintiff was employed, in the presence of his assistant, took the letter from an unsealed envelope and read it aloud to the plaintiff.

A communication of libellous matter between officers or agents of a corporation with reference to its business may be found to be a publication of the libel by the corporation.

Publication to the manager of a branch office of an insurance company and by him to his assistant of a letter, written by the company's superintendent of agencies, addressed to an agent at the branch office

discharging him and containing defamatory statements concerning him, was conditionally privileged, and an action of libel could not be maintained by the agent against the company upon proof of the falsity of the statements unless the agent also sustained the burden of proving actual malice on the part of one of such officers in the publication of the libel.

TORT. Writ in the Superior Court dated September 22, 1939.

The declaration was in seven counts described in the opinion, the first and second for libel and the others for slander.

The case was tried before *Walsh,* J., who ordered verdicts for the defendant on the first two counts and, under leave reserved, ordered entered verdicts for the defendant on the remaining counts. Both parties alleged exceptions.

*F. F. Cohen,* (*T. H. Mahony* with him,) for the plaintiff.

*D. J. Lyne,* (*W. A. Ryan* with him,) for the defendant.

QUA, J. The plaintiff was employed as an insurance agent at the Somerville office of the defendant and was a policyholder in the defendant. On February 9, 1939, in response to a subpoena, he appeared and testified under oath before a committee of the Congress of the United States at Washington, D. C. In reply to questions there put to him he made, in substance, these statements: In elections of directors held by the defendant it has been a general practice in the Somerville office for agents to sign ballots for policyholders without their consent. The witness "would say" he had engaged in that practice, and that a majority of the agents had done so openly in the office. He did not know whether the manager and assistant managers had seen it, but if they had been inquisitive and had watched, he thought they could have seen it. He could not say whether or not any manager or assistant manager knew of the practice. From twenty to thirty per cent of the ballots would be forged. "Personally" the plaintiff did not think he "forged" any ballots. He and other agents at his request would sign their own names to several ballots and put fictitious policy numbers upon them. The manager expected each agent to return a number of signed ballots.

At the trial of this case in the Superior Court the plaintiff testified that this evidence which he had given in Washington was true. There was evidence that it was the practice to hold "office meetings" in the Somerville office to discuss matters relating to the business. The plaintiff further testified in substance as follows: On February 14, after the plaintiff had returned from Washington, the manager of the office, one Collagan, called a meeting of the entire staff of the agency, comprising about forty people. In the course of an address to them he said, "We have amongst us one agent that has testified in Washington. . . . This man is disloyal to the Company for going to Washington to testify, and especially signing forged ballots of the Company's election." Collagan stated "how disloyal a man could be to go to Washington to testify against the Company." He said, "It is a disgrace to have a man like this in our midst," and, "We have one man in here that is a forger who went to Washington and admitted forging names of policyholders." He asked the agents to send telegrams to a senator, who was a member of the committee, denying the testimony given by the plaintiff. At another similar meeting on or about February 16 Collagan read newspaper clippings relative to the investigation in Washington and said, "It is a disgrace to have a man that would forge ballots in our midst. Nothing but a disloyal man could do anything like that." "We have a man in here that forged ballots." At a third meeting, on February 20, Collagan "addressed Mr. Bander directly," saying that he was going to read the plaintiff's testimony given in Washington. After reading it he said, "It is really a disgrace to have a man like Mr. Bander in our midst, deliberately going to Washington and giving testimony of this nature." He added, "a man that could admit forging in Washington, implicating a staff of men in the Somerville office."

There was evidence that, on or about March 3, Collagan, in the presence of the assistant manager, one Tarpey, took from an unsealed envelope and read aloud to the plaintiff a letter from the defendant's superintendent

of agencies, addressed to the plaintiff, discharging the plaintiff and stating that the plaintiff had "signed the names of policyholders to official ballots" for the election of directors. The letter was handed to the plaintiff. On the next day Collagan and Tarpey came to the plaintiff's house, and Collagan took from an unsealed envelope and read aloud to the plaintiff a second letter from the superintendent of agencies to the plaintiff, referring to the first letter and confirming the plaintiff's discharge on the additional ground that he had "knowingly submitted as authentic repetitious official ballots signed by reputed policyholders with fictitious policy numbers placed thereon." Members of the plaintiff's family were in the house at the time, but there was no evidence that they heard the actual reading of the letter. This letter was left at the plaintiff's house. Other evidence will be referred to in connection with matters hereinafter discussed.

The plaintiff's declaration contains seven counts, two for libel (counts 1 and 2), based respectively upon the two letters addressed to the plaintiff from the superintendent of agencies, and five for slander (counts 3, 4, 5, 6 and 7), based upon the various alleged statements of Collagan at the meetings to the effect that the plaintiff was a forger, and that he was a "disgrace" to the agency.

It will be convenient to follow the chronological order of the evidence by taking up the counts for slander first.

1. The counts for slander based upon the alleged statements that the plaintiff was a forger (counts 3 and 4) presented questions for the jury. There was evidence hereinbefore set forth that Collagan made the statements declared upon at meetings held by him in his capacity as manager of the defendant's Somerville office, within the scope of his authority as the defendant's agent, and that the statements were made of and concerning the plaintiff. Charges of crime are slanderous and actionable per se without proof of special damage. *Friedman* v. *Connors,* 292 Mass. 371, 373, 374.

(a) It could not be ruled that the defence of the truth of these statements had been made out as matter of law.

Truth is a complete defence to an action for slander. *Golderman* v. *Stearns*, 7 Gray, 181, 183. *Comerford* v. *Meier*, 302 Mass. 398, 402. The provision of G. L. (Ter. Ed.) c. 231, § 92, by force of which actual malice deprives a defendant of the benefit of this defence in an action for libel does not apply to an action for slander. The burden of proving truth as a defence rests upon the defendant. *Maloof* v. *Post Publishing Co.* 306 Mass. 279, 280. The plaintiff's own testimony given in Washington, which he testified at the trial was true, was equivocal, if not contradictory, as to whether or not he had been guilty of forgery. If the plaintiff had signed the names of other policyholders to ballots, as a part of his testimony seems to indicate, he was a forger at common law. *Commonwealth* v. *Ayer*, 3 Cush. 150, 152. *Commonwealth* v. *Foster*, 114 Mass. 311. If on the other hand, being himself a policyholder, he signed his own name to a number of ballots, not enough appears to make out forgery. As a general rule, "to constitute forgery, the writing falsely made must purport to be the writing of another party than the person making it." *Commonwealth* v. *Baldwin*, 11 Gray, 197, 198. *Fitzgibbons Boiler Co. Inc.* v. *Employers' Liability Assurance Corp. Ltd.* 105 Fed. (2d) 893. This is not a case where the plaintiff finally adhered to one of two conflicting statements and repudiated the other. See *Sullivan* v. *Boston Elevated Railway*, 224 Mass. 405. It was for the jury to say whether or not the accusation of forgery, if made, was true. The defendant must prove the substantial truth of the charge as made. It cannot justify by proof that the plaintiff has been guilty of something perhaps equally bad but substantially different. Proof or admission that the plaintiff has signed his own name to numerous ballots is not a defence to an action for slander for charging him with forgery. *Doherty* v. *Brown*, 10 Gray, 250. *Downs* v. *Hawley*, 112 Mass. 237, 239, 242. *Rutherford* v. *Paddock*, 180 Mass. 289. *Conner* v. *Standard Publishing Co.* 183 Mass. 474, 477, 478. *Monaghan* v. *Globe Newspaper Co.* 190 Mass. 394, 399. *Lynch* v. *Lyons*, 303 Mass. 116, 121. *Maloof* v. *Post Publishing Co.* 306 Mass. 279.

(b) It could not properly be ruled as matter of law that the defence of privilege had been made out with respect to the counts now under consideration (counts 3 and 4). We think that enough appears from facts not in dispute to establish that the defendant did have the benefit of a conditional privilege to discuss to a reasonable extent and in a proper manner through its manager at a meeting of its agents the testimony given by the plaintiff at Washington, including the conduct of the plaintiff thought to have been revealed there and its effect upon the Somerville office. That testimony reflected seriously upon the personal integrity of all of the defendant's agents working from that office and to some extent upon the management of the office.   All of the persons present at the meetings were interested in knowing what the plaintiff had said and done, and the defendant was interested in having them know. The defendant and its agents were interested in taking steps to root out the evil practices of which the plaintiff had testified, if they existed, and in counteracting the unfortunate effect of the plaintiff's testimony at Washington, if they did not exist.   It was proper that the persons interested should be informed and should take counsel together and receive advice from the management.   *Dale* v. *Harris,* 109 Mass. 193, 196.   *Sweet* v. *Post Publishing Co.* 215 Mass. 450, 452.   *Wormwood* v. *Lee,* 226 Mass. 339, 341. *Pion* v. *Caron,* 237 Mass. 107, 110.   *Denver Public Warehouse Co.* v. *Holloway,* 34 Colo. 432.   *Globe Furniture Co.* v. *Wright,* 49 App. D. C. 315.   *Hunt* v. *Great Northern Railway,* [1891] 2 Q. B. 189.   Am. Law Inst. Restatement: Torts, §§ 594, 596, 602.   Compare *Lovejoy* v. *Whitcomb,* 174 Mass. 586.   If the existence of the facts which create the privilege had been in dispute the burden of proving them would have rested upon the defendant.   Am. Law Inst. Restatement: Torts, § 613.   See *Howland* v. *George F. Blake Manuf. Co.* 156 Mass. 543, 572.

(c) But we think that there was evidence for the jury that the defendant abused its privilege by failing to confine itself to the purposes for which the law granted the privilege.   We think there was some evidence of what is

commonly called actual or express malice or malice in fact. *Brow* v. *Hathaway*, 13 Allen, 239. *Doane* v. *Grew*, 220 Mass. 171, 176. See *Gott* v. *Pulsifer*, 122 Mass. 235; Am. Law Inst. Restatement: Torts, § 603. We find this evidence partly in the testimony of the plaintiff as to the repetition of the slanderous words, or some of them, on three different occasions. The jury might have thought that expressions so often repeated in a manner so unrestrained were unnecessary in order to secure the benefit of the privilege. Repetition of slander has frequently been held to be evidence of actual malice. *Baldwin* v. *Soule*, 6 Gray, 321, 323. *Clark* v. *Brown*, 116 Mass. 504, 508. *Doane* v. *Grew*, 220 Mass. 171, 177. *Thompson* v. *Globe Newspaper Co.* 279 Mass. 176, 190. *Conroy* v. *Fall River Herald News Publishing Co.* 306 Mass. 488, 492–495. Moreover, the alleged repetitions by Collagan of the charge that the plaintiff had testified in Washington that he had committed forgery must be taken in connection with evidence that Collagan himself admitted to the plaintiff that he did not think that the plaintiff had testified to forgery in Washington. If the jury believed the plaintiff's evidence, they could find indications of a desire on Collagan's part to humiliate the plaintiff. They could find that Collagan used language which suggests that Collagan regarded the plaintiff as "disloyal," and desired to make an example of the plaintiff merely because he had gone to Washington "to testify against the Company." The terms in which the communication was made may have a bearing upon the question of actual malice. *Gassett* v. *Gilbert*, 6 Gray, 94. *Atwill* v. *Mackintosh*, 120 Mass. 177, 183. *Wright* v. *Lothrop*, 149 Mass. 385. *Robinson* v. *Van Auken*, 190 Mass. 161, 166. *Crafer* v. *Hooper*, 194 Mass. 68, 72. Whether the evidence of actual malice appeared strong or weak at the trial is not our concern. We think that the record discloses its presence. The burden of proving actual malice was upon the plaintiff. *Doane* v. *Grew*, 220 Mass. 171, 182.

(d) The slanderous statements that the plaintiff was a forger, and that he forged ballots, were not reports of, or fair comment upon, official public proceedings, as the defendant contends they were. As testified to by the plaintiff,

these statements did not purport to be an account of what took place in Washington, although that was referred to and discussed. They purported to be statements of fact made by Collagan. They were not comment at all. False statements of fact are not privileged as comment. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 242. *Commonwealth* v. *Pratt*, 208 Mass. 553, 559.

Although counts 3 and 4 presented questions for the jury, we cannot restore the verdicts rendered by the jury on those counts, since those verdicts may have been affected by errors during the trial to which reference will be made later in this opinion.

2. Verdicts were rightly entered for the defendant on the counts based upon alleged oral statements in various forms that the presence of the plaintiff in the office was a "disgrace" (counts 5, 6 and 7).

(a) It seems plain, according to the evidence, that the charges of "disgrace" complained of in these counts were component parts of statements meaning as a whole that the plaintiff was a forger or "disloyal" and *therefore* a "disgrace," and that the characterization "disgrace" cannot fairly be separated out from the real gist of the charge so as to make the characterization an additional cause of action by itself. The words spoken on each occasion must be treated as a unit and gave rise on each occasion to only one cause of action. The plaintiff in his counts 3 and 5 and in his counts 4 and 6 has attempted to split single causes of action into parts that are not separable. *Cracraft* v. *Cochran*, 16 Iowa, 301. *Coleman* v. *Playsted*, 36 Barb. S. C. 26, 30. It is not perceived, however, that, under the circumstances of this case, there is any practical reason why the inclusion in the declaration of the counts based on charges of being a "disgrace" should interfere with recovery on the counts based on charges of forgery, which was the real substance of the accusations made.

(b) But if we pass this whole difficulty and try to treat all three of counts 5, 6, and 7 in the way they are presented as resting simply upon statements (now assumed for the sake of the argument to be separable) that it was "a dis-

grace to have . . . [the plaintiff] in our midst," there can be no recovery upon them.  Such statements are not slanderous per se as affecting the plaintiff in his trade or profession. They do not, taken by themselves alone as the foundation of an action, describe any conduct or characteristic of the plaintiff incompatible with his successfully carrying on the occupation of an insurance agent.  The word disgrace defies definition and has as many shades of meaning as there are persons who use it and occasions for its use.  It is a word of "general disparagement" equally discreditable as applied to all persons and not peculiarly harmful in a financial way to insurance agents.  It does not pass the test for slander per se with respect to trade or profession.  Am. Law Inst. Restatement: Torts, § 573, comment e.  *Morasse* v. *Brochu*, 151 Mass. 567.  *Craig* v. *Proctor*, 229 Mass. 339, 341.  *Stannard* v. *Wilcox & Gibbs Sewing Machine Co.* 118 Md. 151. The words declared upon in these counts (counts 5, 6, and 7) could therefore support recovery only when accompanied by proof of special damage.

(c) Such proof, we think, is lacking in the record before us.  Evidence that the plaintiff was "depressed" and "confined to his bed off and on" is not evidence of special damage in an action for slander.  *Craig* y. *Proctor*, 229 Mass. 339, 343.  *Morrill* v. *Crawford*, 278 Mass. 250, 256.  Am. Law Inst. Restatement: Torts, § 575, comment c.  Such damage is classed as general damage.  The plaintiff testified, apparently without objection, that he was unable to get work because "he had been discharged by the defendant with the record given him."  In the Restatement of Torts, § 575, comment b, it is said that "The special harm must result from conduct of a person other than the defamer or the one defamed which conduct is itself the result of the publication or repetition of the slander."  Hence neither the discharge of the plaintiff by the defendant nor any consequence of that discharge was special damage resulting from slander by the defendant.  This action is not laid upon any "record given him" unless those words can be taken loosely to mean all that the plaintiff claimed the defendant's manager had said at the meetings.  Even if we take them

in that sense, we think that the conclusion or deduction of the plaintiff himself when he testified that he had been discharged "with the record given him" is too slender support for a finding of the necessary elements of special damage through inability to obtain employment. Nothing appears as to what, if any, efforts the plaintiff made to obtain employment. See *Malloy* v. *Carroll,* 287 Mass. 376, 390. It does not appear who, if anyone, refused him employment, or what reason any such person gave for any such refusal. It does not appear by what considerations any such person was influenced, or to what extent he was influenced by the discharge itself, or by the statements as to the plaintiff's conduct made by the plaintiff in Washington which he admitted to be true and which were as much a part of "the record given him" as were the statements declared upon. Moreover, it seems highly improbable that the plaintiff could suffer from inability to obtain employment in consequence of anything said at the meetings except through repetition by someone who was present, and there is no evidence of the circumstances of any repetition to show whether they were such as to render the defendant liable. Ordinarily a defendant is not liable for damage caused by repetition of a slander by another. *Hastings* v. *Stetson,* 126 Mass. 329. *Morrill* v. *Crawford,* 278 Mass. 250, 256. Actions for defamation are open to abuse, and where special damage is claimed a solid foundation for it should be laid in the evidence.

3. There was evidence applicable to the counts for libel (counts 1 and 2) which, under what we must regard as established rules, required the submission of those counts to the jury.

(a) The two letters contained defamatory matter of and concerning the plaintiff. They were published, if the jury believed the evidence, when the defendant's superintendent of agencies wrote and sent the letters, having good reason to believe, as the jury could find he did have, that Collagan would read them (see *Rumney* v. *Worthley,* 186 Mass. 144), and when in fact Collagan did read them; and they were also published by Collagan to Tarpey, his assistant, when

Collagan read them aloud in the presence of Tarpey. We say that the jury could find that the superintendent of agencies had good reason to believe that Collagan would read the letters because Collagan was the manager of the Somerville office, and because there was evidence that "when the Company made any decision concerning business, the home office had to communicate with the district offices," and because there was evidence that the letters were in Collagan's possession, each in an unsealed envelope. The jury could further find that Collagan acted within the scope of his employment as manager in communicating the fact of the plaintiff's discharge to the plaintiff in the manner adopted. *Gibson* v. *Contract Water Proofing Co.* 277 Mass. 455, 458. Am. Law Inst. Restatement: Agency, § 73 (c). *Whipple* v. *Prudential Ins. Co.* 222 N. Y. 39, 46.

(b) We cannot accept the theory urged upon us by the defendant in connection with these libel counts and supported by cases in some jurisdictions that an "intra-corporate communication" between officers or agents of the same corporation in reference to its business is not a publication. See, for example, *Prins* v. *Holland-North America Mortgage Co.* 107 Wash. 206; *Biggs* v. *Atlantic Coast Line Railroad,* 66 Fed. (2d) 87. But see also *Gambrill* v. *Schooley,* 93 Md. 48; *Berry* v. *City of New York Ins. Co.* 210 Ala. 369, 371; *Pullman* v. *Walter Hill & Co. Ltd.* [1891] 1 Q. B. 524; Odgers on Libel & Slander (6th ed.) 135, and cases cited; Harper on Torts, § 236, p. 501. Whatever may be said for this rule, it seems to us inconsistent with long recognized principles, and it might open the door to serious abuse. We perceive no good reason why immunity from liability for defamation communicated by one agent to another should be accorded to an enterprise conducted in the corporate form and denied to an enterprise conducted by an individual or a partnership. The argument that a communication between agents of the same corporation is not a communication to a third person is not impressive in dealing with such a subject as defamation and would apply with almost equal force as between two agents of the same individual or partnership. The rule is repudiated in Am.

Law Inst. Restatemant: Torts, § 577, comment e. So far as we are aware it has never found lodgment in this Commonwealth. There is nothing to the contrary in *Riceman* v. *Union Indemnity Co.* 278 Mass. 149, 151, or in *Economopoulos* v. *A. G. Pollard Co.* 218 Mass. 294, there cited. The defence of privilege is widely available in appropriate instances and, we think, furnishes as great protection as ought to be allowed.

(c) The reading verbatim by one person to another of a writing known to the reader to be libellous is the publication of a libel which will support a count for libel. *Peterson* v. *Western Union Telegraph Co.* 72 Minn. 41, 44. *Sorenson* v. *Wood*, 123 Neb. 348, 355. *Ohio Public Service Co.* v. *Myers*, 54 Ohio App. 40. *M'Coombs* v. *Tuttle*, 5 Blackf. 431. *Snyder* v. *Andrews*, 6 Barb. S. C. 43. *Weidman* v. *Ketcham*, 278 N. Y. 129, 131. *Adams* v. *Lawson*, 17 Grat. 250, 258. *Lamb's Case*, 9 Co. Rep. 59b. *Hearne* v. *Stowell*, 12 Ad. & El. 719. Odgers on Libel & Slander, (6th ed.) 132. Newell, Slander & Libel, (4th ed.) § 181. Whether it would likewise support a count for slander we need not inquire. The decision in *Lynch* v. *Lyons*, 303 Mass. 116, is not inconsistent with what is here decided. In that case the action against Lyons was founded upon long passages in speeches made by the defendant over the radio in the course of which he purported to quote from certain documents. The action was for slander. No question was presented and none was decided as to whether the action could properly have been brought for libel upon the quoted documents alone.

(d) It could not properly be ruled that the defence of truth was made out as matter of law on either count for libel. As we have already explained, it was a question of fact whether the charge of forgery contained in the first letter (count 1) was true. The second letter (count 2) adds another charge that the plaintiff "submitted as authentic repetitious official ballots" with fictitious numbers upon them. The plaintiff became bound by an admission at the trial that the additional charge in the second letter was substantially true; but even as to this charge there was a question for the jury, since there was evidence of actual

malice on the part of Collagan, who published the letter to Tarpey.  G. L. (Ter. Ed.) c. 231, § 92.

(e) But in our opinion, for reasons already fully stated in connection with the slander counts, the undisputed evidence shows that the publications of both letters by the superintendent of agencies to Collagan and by Collagan to his assistant Tarpey were conditionally privileged, and there was no evidence of malice on the part of the superintendent of agencies.  See *Brown* v. *Massachusetts Title Ins. Co.* 151 Mass. 127, 129.  For this reason, as well as because of what seems to have been a waiver at the trial, the plaintiff cannot recover for the publication of either letter by the superintendent of agencies to Collagan, and the jury should be so instructed at the second trial, if the evidence is the same.  But if the jury finds actual malice on the part of Collagan in the publications of the two letters by him to Tarpey the defence of privilege will fail as to those publications.  The burden of proving malice will rest upon the plaintiff.

4. A letter from the president of the defendant to its agents dated February 14, 1939, admitted on the issue of malice, should have been excluded.  It had no tendency to show malice on the part of any agent of the defendant concerned in the publication of the defamatory matter declared upon. See *Thompson* v. *Globe Newspaper Co.* 279 Mass. 176, 192.

5. The entire conversation between Collagan and the plaintiff at the time of the delivery of the first letter was rightly admitted.  It bore upon malice of Collagan.

6. The letter from one Purcell to the commissioner of insurance should have been excluded.  There was no evidence of the authority of Purcell to write the letter in behalf of the defendant, and malice of Purcell was immaterial. The error was not, we think, fully corrected by what was said in the charge.  The jury should have been told wholly to disregard the letter.

7. The defendant's request for ruling numbered 52 that there was no evidence of special damage should have been granted in some form.  The reasons have already been stated.  The judge, in his charge, mentioned the plaintiff's

claim for inability to obtain employment and stated the distinction between general and special damage, as if special damage were a matter for the jury's consideration. Nowhere did he instruct them that special damages were not recoverable in this case. This affects the amount of the damages in the verdicts on counts 3 and 4.

8. There was no error in excluding the testimony given before the committee in Washington by one Tully, assistant secretary of the defendant. The fact that he testified had no bearing upon the issues in the case. If this evidence was offered for the truth of what he said, it was not, so far as appears, an authorized admission of the defendant and was nothing but hearsay. In any event, the contents of his testimony are of very questionable materiality and might be prejudicial to the defendant.

Many exceptions appear in the record. We have dealt with such as are necessary to the present decision and with such as seem likely to recur at another trial and have been argued.

The plaintiff's exceptions are sustained. The defendant's exceptions are sustained. The verdicts for the defendant entered by the judge on leave reserved on counts 3 and 4 are set aside. The verdicts for the defendant entered by the judge on leave reserved on counts 5, 6 and 7 are to stand. The case is to be tried anew on counts 1, 2, 3 and 4.

*So ordered.*