JEREMIAH E. GALVIN *vs.* THE NEW YORK, NEW HAVEN
AND HARTFORD RAILROAD COMPANY.

Suffolk.  May 2, 1960. — July 12, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& CUTTER, JJ.

*Libel and Slander. Malice.*

A conditional privilege to make a defamatory statement may be abused
and so lost by the person making the statement even though there is no
actual malice on his part.  [297–298]

Evidence, that on a public street in front of a railroad storehouse where
a policeman of the railroad who had been assigned to guard the store-
house, two other employees of the railroad acting within the scope of
their employment, and an increasing crowd of onlookers were present
one of the two employees loudly accused the policeman several times of
stealing goods from the storehouse and, after the policeman had re-
quested that they "get away from this crowd," the other employee
"spoke up" so as to be heard by the onlookers and accused him of the
theft, warranted findings that the railroad's conditional privilege re-
specting the accusations was abused and so lost and that it was liable
to the policeman for slander, even though there was no actual malice
on the part of the accusing employees.  [298]

TORT.  Writ in the Superior Court dated May 18, 1955.
The action was tried before *Swift,* J.

*John T. Gaffney,* (*Patrick F. Murphy* with him,) for the
plaintiff.

*Noel W. Deering,* for the defendant.

SPALDING, J.  This action of tort, originally brought
against the corporate defendant and two of its employees,
Curley and Flynn, was submitted to the jury only against
the corporate defendant, hereinafter called the defendant.[1]
The case having been submitted on three counts (slander,
false imprisonment, and breach of contract), the jury re-
turned a verdict for the plaintiff on the slander count, and

---

[1] The counts against Curley and Flynn were "waived in open court after
all parties had rested and after the attorney for the defendants had argued
to the jury."

verdicts for the defendant on the other two. The verdict for the plaintiff was recorded under leave reserved. Thereafter the judge, on motion of the defendant, entered a verdict for the defendant on the slander count. The case comes here on the plaintiff's exceptions to this action and to a ruling on evidence.

There was evidence of the following: The plaintiff was employed by the defendant as a member of its police force. On August 7, 1953, he was assigned to guard the defendant's ullage house on C Street, South Boston. The ullage house was used to store broken crates of vegetables until they were sold at auction. Suspecting thefts from the ullage house, the defendant assigned two of its police officers, Curley and Flynn, to watch the house. From 10 P.M. on August 6 until approximately 5 A.M. on August 7 they watched the ullage house from their automobile, parked about 300 feet away. During this period they observed the plaintiff going from the ullage house to his car carrying packages. This occurred several times. On the last occasion they saw the plaintiff get into his car and drive it from the parking lot, where it had been parked, to C Street where, at a place near the end of the ullage house, he left it. Around 6 A.M., as a result of a conversation with Sergeant Hartnett (a police officer in the defendant's employ), the plaintiff, accompanied by Hartnett, left the ullage house and "went out onto C Street where he observed . . . [Curley and Flynn] standing beside the plaintiff's automobile."

The plaintiff's version of what happened thereafter is as follows: He saw "Curley trying the doors of his car, and he observed four or five truck drivers standing on the sidewalk at about the center of his car." He walked toward his car with Hartnett and when they were within twelve or fifteen feet from it "Curley said in a loud voice 'Open up your car. We know what has been going on here during the night.'" The truck drivers were about six to eight feet away when Curley made this statement. Curley made it "in a very loud voice. He hollered it." Again "Curley hollered 'Open up your car and take out the stuff that

you stole during the night.' " By this time the truck drivers were "right beside Curley and were starting to form around . . . [the plaintiff's] car." Replying to Curley, the plaintiff said "I don't know what you are talking about." "Curley said in a loud voice 'If you do not open your car and show us the stuff you stole, we will take you up to station 6 and have you booked on suspicion and have your car opened.' At that time there were thirty to fifty truck drivers and workers all gathered in a circle around . . . [the plaintiff's] car." The plaintiff asked Curley if they "could get away from this crowd." Flynn "then spoke up and said 'Why don't you open up your car? I have watched you all night long going to different baskets in the ullage room and taking stuff and bringing it to your car.' " In reply the plaintiff stated that he had never taken "anything from anybody" and that Flynn knew it. Flynn answered "Why don't you take the stuff out of your car that you stole during the night and have this over with?" The plaintiff at that time was eight to ten feet away from Flynn and had no difficulty hearing him. "[T]here were then fifty to sixty drivers and workers circled around the three of us."

The plaintiff, at Curley's suggestion, shortly thereafter drove his car to yard 7, and Curley, Flynn and Hartnett followed. There the plaintiff opened his car and produced a bag with six potatoes, two heads of lettuce and a cantaloupe. The plaintiff was then told to drive to "8 House" where he stayed from 7 A.M. until 8:30 when he was informed that he had been dismissed from the defendant's employ. The plaintiff testified that the property found in his car had been given to him in the ullage house by the owners. "[N]o criminal complaint of any kind was issued against the plaintiff."

It was agreed that Curley and Flynn were employees of the defendant on August 7, 1953, and were acting at that time within the scope of their employment as patrolmen.

The alleged defamatory statements were accusations of crime and were actionable without proof of special damage.

*Crafer* v. *Hooper,* 194 Mass. 68, 72. *Friedman* v. *Connors,* 292 Mass. 371, 373–374. And, since it could have been found that they were uttered by the defendant's employees in the course of their employment, the defendant would be subject to liability. *Mills* v. *W. T. Grant Co.* 233 Mass. 140. *Pion* v. *Caron,* 237 Mass. 107, 111. *Pihl* v. *Morris,* 319 Mass. 577, 581. The defendant does not contend otherwise. The sole ground urged by the defendant in support of the action of the judge in entering a verdict for the defendant is that the statements were made in such circumstances as to be privileged. It is undoubtedly the law that if the defendant, having reasonable cause to believe that someone had been stealing property from the ullage house, sought to discover the guilty party for its own protection, and, without malice and in the belief that it was true, charged the plaintiff with theft, the words would be privileged. It is the typical case of a privileged occasion. *Brow* v. *Hathaway,* 13 Allen, 239, 241–242. *Dale* v. *Harris,* 109 Mass. 193, 196. *Wormwood* v. *Lee,* 226 Mass. 339, 341. *Pion* v. *Caron,* 237 Mass. 107, 110.

The judge, on the evidence, could rightfully have concluded, as evidently he did by entering a verdict for the defendant, that the alleged defamatory words were uttered in privileged circumstances. The plaintiff does not argue the contrary. His position is that (1) the privilege is not absolute but conditional; (2) it can be destroyed by proof of abuse of the privilege; and (3) there was sufficient evidence of such abuse as to require the submission of the case to the jury. As to the correctness of the first two propositions there can be no doubt. *Gassett* v. *Gilbert,* 6 Gray, 94, 97. *Dale* v. *Harris,* 109 Mass. 193, 196. *Doane* v. *Grew,* 220 Mass. 171. *Pion* v. *Caron,* 237 Mass. 107, 110. *Bander* v. *Metropolitan Life Ins. Co.* 313 Mass. 337, 343–344. *Sheehan* v. *Tobin,* 326 Mass. 185, 189–192. *Grindall* v. *First Natl. Stores Inc.* 330 Mass. 557, 559. See Restatement: Torts, § 599. The question, therefore, narrows down to the correctness of the plaintiff's third proposition, namely, that there was evidence from which the jury could find that the

privilege had been abused.   See *Dale* v. *Harris,* 109 Mass. 193, 196.   As to this issue the burden was on the plaintiff. *Bander* v. *Metropolitan Life Ins. Co.* 313 Mass. 337, 344.

It is settled that proof of actual malice will constitute an abuse of the privilege.   See e.g. *Gassett* v. *Gilbert,* 6 Gray, 94, 97; *Doane* v. *Grew,* 220 Mass. 171, 176; *Bander* v. *Metropolitan Life Ins. Co.* 313 Mass. 337, 343–344; *Grindall* v. *First Natl. Stores Inc.* 330 Mass. 557, 559.   If proof of actual or express malice is essential to the destruction of the privilege, the plaintiff's case fails, for we are of opinion that the evidence would not warrant a finding of such malice.   We recognize, of course, that it "is not necessary to prove . . . [malice] by extrinsic evidence.   It may be inferred from the relation of the parties, the circumstances attending the publication, and even from the terms of the publication itself."   *Gassett* v. *Gilbert,* 6 Gray, 94, 98. Nevertheless, we think that the evidence falls short of proof of actual or express malice.

But there may be an abuse of the privilege in the absence of actual malice.   The privilege may be abused by an unnecessary, unreasonable or excessive publication of the defamatory matter.   This principle has been well stated in Harper and James, Torts, where, at page 455, it is said, "Where a publication is privileged by reason of the circumstances and occasion on which it is made, the privilege may be so far abused by an unnecessary and excessive publication that the immunity is lost, i.e., the defendant has gone beyond the area allowed by the privilege and is no longer protected.   Thus, if an occasion is privileged as to communications between certain parties, the privilege is lost if the communication is made in such a manner as to unnecessarily and unreasonably publish it to others, as to whom the occasion is not privileged."   For authorities in accordance with this view see Cooley on Torts (4th ed.) § 158; Hallen, Excessive Publication in Defamation, 16 Minn. L. Rev. 160, 161, 163; Newell on Slander and Libel (4th ed.) § 437; Prosser on Torts (2d ed.) pp. 627, 629; Restatement: Torts, § 604; 33 Am. Jur., Libel and Slander,

p. 178; 166 A. L. R. 141; see also *Montgomery Ward & Co.*
v. *Watson,* 55 F. 2d 184, 187 (4th Cir.); *Montgomery Ward
& Co.* v. *Nance,* 165 Va. 363, 379. While none of our deci-
sions has expressly applied this principle (the matter of
excessive publication usually having been discussed as an
element of malice) we find nothing in our cases which is
inconsistent with this principle. See *Brow v. Hathaway,*
13 Allen, 239, 242; *Dale* v. *Harris,* 109 Mass. 193; *Grindall*
v. *First Natl. Stores Inc.* 330 Mass. 557, 559; *Sheehan* v.
*Tobin,* 326 Mass. 185, 194–195. We think that the time has
now come to recognize that there can be an abuse of a con-
ditional privilege by conduct which cannot fairly be classed
as express or actual malice.

The question then is whether within the principles just
stated there was evidence that would warrant a finding
that the defendant abused the privilege. A majority of the
court are of opinion that there was.

There was evidence that the accusations were made
loudly and repeatedly in the presence of an increasing
crowd of disinterested onlookers. In addition, the plain-
tiff testified that Flynn continued to make his accusations
within the hearing of the bystanders even after he (the
plaintiff) requested that they move to an available and less
public place to carry on the investigation. While the privi-
lege will not be defeated by the mere fact that the defama-
tory matter was incidentally overheard by disinterested
persons (*Brow* v. *Hathaway,* 13 Allen, 239, 242), we are of
opinion that the evidence here went beyond this and would
warrant a finding that the defendant's publication of the
accusations was in the circumstances so unreasonable or ex-
cessive as to constitute an abuse of the privilege. See
Prosser on Torts (2d ed.) p. 627; Hallen, Excessive Publica-
tion in Defamation, 16 Minn. L. Rev. 160, 161, 163.

The conclusion reached makes it unnecessary to pass on
the plaintiff's exception to the exclusion of evidence. The
plaintiff's exceptions are sustained and judgment is to be
entered on the verdict returned by the jury.

*So ordered.*