August 4, 1994 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-2121

THERESA LYONS AND DENNIS LYONS,

Plaintiffs, Appellants,

v.

NATIONAL CAR RENTAL SYSTEMS, INC.
(OF DELAWARE),

Defendant, Appellee.

ERRATA SHEET

The opinion of this court issued on July 27, 1994, is
amended as follows:

Amend the cover sheet as follows: "Kathleen E. Cross, with

whom Brenda M. Cotter, Gerald P. Tishler, and Brown, Rudnick,

Freed & Gesmer, P.C. were on brief for appellee."

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-2121

THERESA LYONS AND DENNIS LYONS,

Plaintiffs, Appellants,

v.

NATIONAL CAR RENTAL SYSTEMS, INC.
(OF DELAWARE),

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

[Hon. Donald E. Walter, U.S. District Judge]

Before
Breyer,* Chief Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

Matthew Cobb, with whom the Law Firm of Matthew Cobb was on brief

for appellants.
Kathleen E. Cross, with whom Brenda M. Cotter, Gerald P. Tishler,

and Brown, Rudnick, Freed & Gesmer, P.C. were on brief for appellee.

July 27, 1994

*Chief Judge Stephen Breyer heard oral argument in this matter but did
not participate in the drafting or the issuance of the panel's
opinion. The remaining two panelists therefore issue this opinion
pursuant to 28 U.S.C. 46(d).

BOWNES, Senior Circuit Judge. Plaintiff-appellant,
BOWNES, Senior Circuit Judge.

Theresa Lyons (Lyons), appeals from the entry of judgment as

a matter of law in favor of defendant-appellee, National Car

Rental Systems, Inc. (National), on her claims of slander and

violating the Massachusetts Civil Rights Act. Lyons had

filed a nine count complaint in the district court against

National after her termination. Six counts were dismissed

pretrial on a motion for summary judgment.1 No appeal was

taken from the summary judgment dismissal. The remaining

three counts, which included a count by plaintiff's husband

for loss of consortium, were tried before a jury. The trial

was bifurcated. After plaintiff rested on her liability

counts, defendant moved for judgment as a matter of law under

Fed. R. Civ. P. 50. After briefing and argument by the

parties, the court entered judgment for defendant as a matter

of law.

Plaintiff filed a timely appeal which included the

loss of consortium count. The issues on appeal are whether

either or both of the liability counts should have been

submitted to the jury. Our standard of review has been

stated as follows:

A reviewing court applies the same
standard that governed adjudication of

1. The counts dismissed on motion for summary judgment were
breach of contract, libel, invasion of privacy, intentional
infliction of emotional distress, negligent infliction of
emotional distress, and false imprisonment.

-2-
2

the Rule 50 motion below: we
"scrutiniz[e] the proof and the
inferences reasonably to be drawn
therefrom in the light most hospitable to
the nonmovant," refraining entirely from
"differential factfinding." In the
process, we may "not consider the
credibility of witnesses, resolve
conflicts in testimony, or evaluate the
weight of the evidence."

Cook v. Rhode Island Dep't of Mental Health, 10 F.3d 17, 21

(1st Cir. 1993) (citations omitted).

THE FACTS

In accord with the standard of review, we state the

facts in the light most favorable to the plaintiff. Lyons

worked for National at Logan International Airport in Boston,

Massachusetts. She began working for National in 1983 as a

rental representative, became a customer service manager in

1985, and was promoted to regional training manager in 1989.

Lyons' immediate supervisor was Ellen Justiniano.

This action arose from events that occurred during

a training conference held by National at its headquarters in

Minneapolis, Minnesota, during the week of April 8, 1991.

Lyons attended the conference along with her regional

counterparts. During the conference, Lyons encountered some

problems with her supervisor, Justiniano. The first day she

arrived Lyons was in the elevator with Justiniano. Lyons

looked at her keys and remarked, "I am a little bit

confused." Whereupon Justiniano responded, "Well, what else

is new?" She was told during one session by Justiniano that

-3-
3

she was embarrassing her by nodding off and to go into the

bathroom and put on some make-up. During one of the training

sessions Justiniano slipped her a note which read, "Terry, I

just put you through training. Why are you embarrassing me?

Why aren't you answering any questions?"

On Friday, April 12, the last day of the

conference, Justiniano pulled her aside and told her that the

company was investigating a car theft from its office in

Boston and Bryan Viau, National's chief of security, would

like to speak to Lyons to get some input. Lyons agreed to

meet with Viau at his office at ten o'clock.

After greeting Lyons in his office, Viau escorted

her into a very small room. It had a round table with a box

of tissues on it, which caught her eye, and chairs at the

table two or three feet apart. One of the chairs was already

occupied by a woman, Trudie Levesque. She was there because

of National's policy when questioning employees of the

opposite sex. Viau started the interview by asking Lyons how

her week had been going. She responded by starting to cry.

She told Viau that she had a bad week, that she had a bad

relationship with her boss, and that her boss had not been

very nice to her.

Lyons then asked Viau to please tell her what was

going on. Viau pointed to a folder and said, "I have strong

evidence that you were involved in a company theft." Lyons

-4-
4

became hysterical and asked several times if she could see

the evidence. Viau refused to show her the evidence. Lyons

then said, "Why would I be crying so hard if I was guilty of

doing something like that?" Viau responded by saying that it

was people like her who cry a lot that are the guilty ones.

He also said that it was people like her who know the ins and

outs of the company that do things such as that. Viau also

told her that she had the face of a good liar. Viau continued

to say, "Terry, you know, you know the ins and outs. It's

people like you. If you don't speak now, you will be

prosecuted. You will lose your job." At some point Viau

left the room. When he came back, Lyons asked him what was

going to happen at this point. He said, "You go back to your

job, and when we have the evidence we will prosecute you.

Just go back and do your job." Viau also told her that if a

trial "was to come forward," he would let her know. This

ended the interview. During the interview, Lyons named her

stepson as the possible thief because he had a prior record

of stealing cars. She did this in an attempt to help Viau

identify the real thief.

On cross-examination Lyons said that she never

asked to leave the interrogation room. She testified that

Viau never touched her or threatened to touch her, and that

although Viau raised his voice during the interview, he never

shouted. Based on facts that were represented to have been

-5-
5

known by National, Lyons agreed that National had some basis

for questioning her. She further testified on cross that she

had the opportunity to say anything she wanted about the

theft.

When Lyons got into the van to go to the airport

for her trip home, she was still visibly very much upset.

When asked by some of her colleagues what was wrong, she told

them that she had been accused of car theft. After arriving

home, Lyons told members of her family about the interview

and accusation of car theft. She went back to work in

National's Boston office.

Viau's questioning of Lyons was prompted by a prior

investigation which disclosed evidence suggesting that the

theft was an inside job involving someone with the name of

Lyons. The stolen car was ultimately found in the possession

of a Barbara Lyons. The only link between Barbara Lyons and

the plaintiff was that, unknown to plaintiff, Barbara Lyons

was having a relationship with plaintiff's brother-in-law,

Patrick Dello Iacono, who was a sergeant on the Everett

Police department. Viau decided to interview plaintiff after

consultation with her supervisors, Foley, Ceruolo, and

Justiniano.

THE SLANDER COUNT

Because this is a diversity case, Massachusetts law

applies. We agree with the district court that the

-6-
6

statement, "National has strong evidence you are involved in

a car theft," was slanderous. Galvin v. New York, New Haven

and Hartford R.R. Co., 168 N.E.2d 262, 294 (Mass. 1960)

(accusations of crime actionable without proof of special

damage); Bander v. Metropolitan Life Ins. Co., 47 N.E.2d 595,

598 (Mass. 1943) (same).

The district court held that the other statements

made during the interview were not slanderous: "You have the

face of a good liar"; "It's people like [you] who cry that

are the guilty ones"; "It's people like [you] who know the

ins and outs of the company that do things such as that";

"Terry, you know, you know the ins and outs. It's people like

you"; and "If you don't speak now, you will be prosecuted."

We do not think that these statements should have

been excised from the accusation of car theft. All the

statements made by Viau were part and parcel of that

accusation. This is not a situation where statements are

made at different times and in different contexts. The

statements were made during one interview. National accused

plaintiff of car theft, and because she denied it, said she

was a liar. Part of the theft accusation was that as an

employee of National, she had the knowledge of company

practice and the opportunity to commit the theft. She also

was told that if she did not confess to the theft she would

be prosecuted. The statements, taken as a whole, constituted

-7-
7

a single accusation that Lyons had stolen a company car and

an attempt by National to have her confess to the accusation.

Defendant argues that because plaintiff did not

specifically object to the district court rulings finding the

statements not slanderous during the Rule 50 hearings, she is

precluded from raising the issue here. There is no merit to

this contention. The plaintiff argued that the statements

were slanderous during the Rule 50 hearing. Tr., 2d day, pp.

95-97. And she also argues to the same effect in her

appellate brief. Plaintiff's Brief at 13. This was

sufficient to preserve the issue for review. There is no

requirement that specific objections to the court's rulings

be made during a Rule 50 hearing. It suffices that the

plaintiff raise the issues so that the court understands what

they are. This was clearly done here. The requirement that

specific objections be made to the introduction of evidence

or to the court's final charge to the jury do not, contrary

to defendant's suggestion, apply to a Rule 50 hearing.

Although defendant has not argued lack of

publication on appeal, the district court did express doubts

about publication during the Rule 50 hearing. We simply note

that the publication requirement for a slander action under

Massachusetts law was met here. Brauer v. Globe Newspaper

Co., 217 N.E.2d 736, 739 (Mass. 1966):

There is no requirement in an action of
libel "that the defamatory matter be

-8-
8

communicated to a large or even
substantial group of persons. It is
enough that it is communicated to a
single individual other than the one
defamed." Restatement: Torts, 577.
See Bigelow v. Sprague, 140 Mass. 425,

426-427, 5 N.E. 144; Rumney v. Worthley,

186 Mass. 144, 71 N.E. 316; Bander v.

Metropolitan Life Ins. Co., 313 Mass.

337, 349, 47 N.E.2d 595; Prosser, Torts
(3d ed.) 108.

In Bander v. Metropolitan Life Ins. Co., 47 N.E.2d

at 601, the court held that there was no "immunity from

liability for defamation" communicated by one agent of a

corporation to another agent. The presence of the third

person in the interrogation room was sufficient to meet the

publication requirement.

We now turn to the related issues of conditional

privilege and malice. We agree with the district court that

the facts giving rise to a conditional privilege by National

were proven during plaintiff's case-in-chief. National's

prior investigation had disclosed that a person by the name

of Lyons was probably involved in the car theft. Prior to

the interrogation of plaintiff, Viau had grounds for

suspecting that the theft was an inside job. And plaintiff

herself stated that National had some basis to question her

about the car theft.

Massachusetts courts have recognized that
a person may possess a conditional
privilege to publish defamatory material
if the publication is reasonably
necessary to the protection or

-9-
9

furtherance of a legitimate business
interest.

Bratt v. Int'l Business Machines Corp., 467 N.E.2d 126, 131

(Mass. 1984); see also McCone v. New England Tel. and Tel.

Co., 471 N.E.2d 47, 51 (Mass. 1984).

The basic issue is whether National lost its

conditional privilege by abusing it. We rule that under the

law and the facts this was a jury question. In Foley v.

Polaroid Corp., 508 N.E.2d 72 (Mass. 1987), the Supreme

Judicial Court reiterated the test for abuse of the

privilege:

[w]hen as here, executives of a corporate
employer make statements that defame an
employee, and the information disclosed
by those statements is reasonably related
to the employer's legitimate business
interests, the employee has the burden to
prove that the statements were made
recklessly, that is, that they were
unnecessary, unreasonable, or excessively
published. Of course, a statement made
with knowledge of its falsity or with
reckless disregard for the truth would be
reckless within the meaning of the rule.

Id. at 79-80 (citations omitted).

A finding of recklessness is necessary to overcome

a conditional privilege. In Bratt, 467 N.E.2d at 131, the

court pointed out that proof of "actual malice" was not a

prerequisite to the loss of the privilege. Id. (citing

Galvin, 168 N.E.2d at 266). The court then went on to

explain that Massachusetts law favored "recklessness" or

"malice in fact" as the standard. Id. It defined one type

-10-
10

of "malice in fact" as "'the willful doing of an injurious

act without lawful excuse.'" Id., n.9 (quoting Doane v.

Grew, 107 N.E. 620, 621 (Mass. 1915)). The court concluded,

that loss of a defendant's conditional
privilege in a defamation action through
"unnecessary, unreasonable or excessive
publication" requires proof that the
defendant acted recklessly.

Id. at 132.

We think that a factfinder could reasonably

conclude that the statements made during the interrogation of

plaintiff were reckless. Plaintiff was told at the outset by

Viau: "I have strong evidence that you were involved in a

company theft." Viau pointed to a folder during the

accusation; this implied that it contained such evidence.

But the evidence was not disclosed to plaintiff, despite her

request to see it. In fact, there was no "strong evidence"

that plaintiff had been involved in a company theft. All

that National had at that time was, at best, a reasonable

suspicion. Plaintiff was then called a liar and told that

because of her position in the company she had the knowledge

to commit the theft. She was then threatened with

prosecution and loss of her job if she did not confess to the

theft. These statements considered as a whole could be found

to be "reckless" under Massachusetts law.

We also think that "malice in fact" could

legitimately be found. First, there was evidence from which

-11-
11

a jury could find that plaintiff's immediate supervisor,

Justiniano, either disliked plaintiff personally or was

displeased with her conduct at the meeting. But of telling

significance was the conduct of the interrogation. In fact,

it was not an interrogation but an inquisition. Accusations

and threats were made; there was no attempt to determine the

facts objectively. The manner in which the interrogation was

conducted fairly reeked of malice. It could reasonably be

found that the accusations and threats made to plaintiff were

"the willful doing of an injurious act without lawful

excuse." Bratt, 467 N.E.2d at 131, n.9.

The judgment of the district court on the slander

count is reversed. The determination was for the jury.

Because the loss of consortium count rises or falls with the

slander count, it also remains viable.

THE MCRA COUNT

Plaintiff's next argument on appeal arises from the

district court's granting of National's motion for judgment

as a matter of law on her Massachusetts Civil Rights Act

[MCRA] claim. Plaintiff claimed that National, through its

employee Viau, violated the MCRA by using threats and

intimidation in an attempt to cause her to relinquish her

Fifth Amendment right against self-incrimination. See Mass.

Gen. Laws ch. 12 11I. No claim was asserted against Viau

individually.

-12-
12

The MCRA states, in pertinent part:

Any person whose exercise or enjoyment of
rights secured by the constitution or
laws of the United States . . . has been
interfered with, or attempted to be
interfered with [by any person or
persons, whether or not acting under
color of law, by threats, intimidation or
coercion,] may institute and prosecute in
his own name and on his own behalf a
civil action for . . . money damages. . .
.

Id. 11H, 11I. The district court granted National's

motion, finding first that the MCRA did not recognize claims

based on the doctrine of respondeat superior, and second that

plaintiff presented not a "scintilla" of evidence that Viau's

actions were taken pursuant to any policy or custom

established by National. Plaintiff challenges on appeal only

the first finding. Assuming, without deciding, that

plaintiff would have had an actionable MCRA claim if she had

named Viau as a defendant, we turn to the respondeat superior

issue.

The question of whether an employer may be held

vicariously liable under the MCRA for the actions of its

employee has not been addressed by any Massachusetts state

court. See, e.g., Rodriques v. Furtado, 575 N.E.2d 1124,

1131 n.14 (Mass. 1991) (expressly declining to decide issue

with respect to municipal employer); cf., e.g., O'Connell v.

Chasdi, 511 N.E.2d 349, 354 (Mass. 1987) (remanding for trial

MCRA claim asserted against private employer for acts of

-13-
13

employer's agent, without questioning applicability of

respondeat superior). Similarly, we have never had occasion

to answer this question. See, e.g., Dean v. City of

Worcester, 924 F.2d 364, 370 n.7 (1st Cir. 1991) (declining

to comment on issue with respect to municipal employer). The

only courts that have addressed the issue have determined

that claims under the MCRA cannot be based on the doctrine of

respondeat superior. E.g., Broderick v. Roache, 803 F. Supp.

480, 484 (D. Mass. 1992) (municipal employer); Jones v. City

of Boston, 738 F. Supp. 604, 606 (D. Mass. 1990) (private

employer).

"Absent controlling state court precedent, a

federal court sitting in diversity may certify a state law

issue to the state's highest court, or undertake its

prediction, `when the [route] [the] state courts would take

is reasonably clear.'" Vanhaaren v. State Farm Mut. Auto.

Ins. Co., 989 F.2d 1, 3 (1st Cir. 1993) (citation omitted).

Because we find sufficient guidance on this issue, we follow

the latter course.

The Massachusetts Supreme Judicial Court [SJC] has

clearly described the scope of the MCRA:

The Legislature enacted [the MCRA] to
provide a State remedy for deprivations
of civil rights. The statute extended
beyond the limits of its Federal
counterpart by incorporating private
action within its bounds. We conclude

that the Legislature intended to provide

a remedy under [the MCRA], coextensive

-14-
14

with 42 U.S.C. 1983, except that the

Federal statute requires State action
whereas its State counterpart does not.

Batchelder v. Allied Stores Corp., 473 N.E.2d 1128, 1131

(Mass. 1985) (emphasis added). "[B]y reaching private party

actions, the Legislature did not intend to create `a vast

constitutional tort,'" and thus limited the MCRA remedy to

cases involving threats, intimidation, or coercion. Bally v.

Northeastern Univ., 532 N.E.2d 49, 52 (Mass. 1989) (citation

omitted).

Rulings in 1983 cases predating the MCRA may be

used to determine whether doctrines applicable under 42

U.S.C. 1983 also apply under the MCRA. See Duarte v.

Healy, 537 N.E.2d 1230, 1232 (Mass. 1989) ("We presume that

the Legislature was aware of this case law [on qualified

immunity] when it chose to pattern the Massachusetts Civil

Rights Act after 1983."). Accordingly, we look to cases

construing the federal Civil Rights Act for guidance in the

present action.

In Monell v. New York Dep't of Soc. Servs., 436

U.S. 658 (1978), the Supreme Court considered whether local

governments may be liable under 1983 for the

unconstitutional conduct of their employees. The Court held

that claims against municipalities cannot rest on a theory of

respondeat superior, but may proceed if there is proof that

the employee acted in accordance with the employer's policy

-15-
15

or custom. Id. at 694. In a concurrence, Justice Powell

stated that Congress's intent, as expressed in the

legislative history of 1983, can best be understood as

limiting "the statutory ambit to actual wrongdoers, i.e., a

rejection of respondeat superior or any other principle of

vicarious liability." Id. at 707 (Powell, J. concurring).

Plaintiff argues that Monell's rejection of

respondeat superior cannot be grafted on the MCRA because

Monell concerns only municipalities, while the MCRA may be

invoked against private parties. We disagree. Although the

holding in Monell is framed so that it expressly applies only

to local governments, the decision is based generally on the

language and legislative history of 1983, not on

principles--such as sovereign or qualified immunity--

applicable only to governmental entities. See Monell, 436

U.S. at 690-94.

It is true that one aspect of Monell's discussion

of the legislative history of 1983 has no relevance to

private corporations: certain members of Congress opposed

making municipalities vicariously liable on the ground that

Congress lacked the power to impose "positive" duties on

local governments. Id. at 679-83, 693. We do not believe,

however, that this aspect of the Court's reasoning undermines

our conclusion. The remainder of Monell focusses on matters

pertinent to all employers, public or private. The Court

-16-
16

stated, for example, that Congress declined to make

municipalities vicariously liable under 1983, despite

arguments that vicarious liability would reduce the incidence

of unconstitutional acts and would spread the cost of

injuries throughout the community. Id. at 693-94. These

justifications are equally applicable to private

corporations.

The Massachusetts legislature enacted the MCRA in

1979, one year after Monell was decided. Presumably, the

legislature was aware of Monell. Duarte, 537 N.E.2d at 1232.

The language of the MCRA contains no indication that the

legislature intended to expand the scope of employer

liability under the MCRA beyond that available under 1983.

Compare Mass. Gen. Laws ch. 12, 11H ("Whenever any person

or persons, whether or not acting under color of law,

interfere by threats, intimidation or coercion . . .") with

42 U.S.C. 1983 ("Every person who, under color [of law],

subjects, or causes to be subjected, any [other person] to

the deprivation of any rights . . ."). Moreover, it is clear

that the state legislature knew how to pass statutes

embracing the doctrine of respondeat superior. E.g., Mass.

Gen. Laws ch. 151B 3(1) ("It shall be an unlawful practice:

For an employer, by himself or his agent" to discriminate on

the basis of race, religion, ethnicity, sex, or age); id. ch.

258, 2 ("Public employers shall be liable for injury or

-17-
17

loss of property . . . caused by the negligent or wrongful

act or omission of any public employee while acting within

the scope of his office or employment . . . .") (enacted

1978). Finally, the parties have not cited anything in the

legislative history of the MCRA indicating that the

legislature intended to make employers vicariously liable for

the acts of their employees. Accordingly, we hold that

claims against employers under the MCRA cannot rest on the

doctrine of respondeat superior.

SUMMARY

We reverse the district court's judgment on the

slander claim and on the loss of consortium claim based on

the slander issue and remand for a new trial on those claims.

As to the MCRA claim, the district court's judgment is

affirmed.

Affirmed in part, reversed in part. No costs.
Affirmed in part, reversed in part. No costs.

-18-
18