BOSTON NUTRITION SOCIETY, INC. *vs.* FREDERICK J. STARE.

Norfolk.   December 7, 1960. — April 10, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Libel and Slander.   Corporation,* Libel, Charitable corporation.   *Plead-ing, Civil,* Demurrer.   *Malice.*

A demurrer to the declaration in an action for libel should not be sustained unless the published words are not reasonably capable of any defamatory meaning.   [442]

One who without a privilege publishes a false statement concerning a charitable corporation tending to prejudice it in public estimation and thereby to interfere with the conduct of its activities is liable to the corporation.   [442]

In an action for libel by a charitable corporation "engaged in educational work with reference to proper food and diet" against one who in a magazine article had commented on an "open letter" in which the plaintiff had condemned enriched white bread, an order sustaining a demurrer to the declaration was reversed where the declaration alleged that, without right or privilege, the defendant's article "falsely and maliciously suggested and intended to suggest . . . that the plaintiff . . . was not an honorable, truthful . . . organization, but was . . . perpetrating a cruel and reckless fraud," that "the plaintiff's motive" in using the same telephone number as that of a shop purveying "health foods" was "sinister and corrupt and for the purpose of defrauding the public," that the "plaintiff was a 'food-faddist organization' comprised of 'faddists' (connoting insincere, odd, uninformed, reckless eccentrics) who are trying to mislead and impose a 'cruel and reckless fraud' upon the American people," and that "the plaintiff was guilty of using 'scare tactics' instead of educational procedures, all in the performance of its duties."   [442–443]

The point that a magazine article was privileged as fair comment on a question of public interest was a matter of defence not open to the defendant on demurrer to the declaration in an action for libel based on such article.   [443]

Malice in the publication of a defamatory statement would destroy a conditional privilege to make it.   [443]

TORT.   Writ in the Superior Court dated June 1, 1959.

The action was heard by *Macaulay,* J., on demurrer.

*John R. Auchter,* for the plaintiff.

*John R. Hally,* for the defendant.

Boston Nutrition Society, Inc. *v.* Stare.

SPALDING, J.   The substance of the declaration in this action of tort for libel is as follows:  The plaintiff is a charitable corporation organized under G. L. c. 180, and is "engaged in educational work with reference to proper food and diet."  Since 1956 it has enjoyed the good will and coöperation of its members and of physicians and persons throughout the country, and it depends on this good will and coöperation for the success of its charitable activities. The allegedly libellous statement was made by the defendant in an article in the March, 1959, issue of McCall's magazine.  In this article the defendant, who was the head of the nutrition department of the School of Public Health of Harvard University, answered questions presumably sent in by members of the general public.  The answer that is alleged to be defamatory and the question to which it was addressed are as follows:  "Q.  I am enclosing a clipping from an 'open letter' from the Boston Nutrition Society that is really frightening:  'The enriched white bread fed to the American public is a national scandal.  First of all, the wheat grown on poor soil and fertilized with water-soluble commercial fertilizer is of low protein content. . . . The modern flour mill removes the precious vitamins and minerals.  This is then bleached with a powerful oxidizing agent, chlorine dioxide (which is a poison); and to this life-less mess, a few dead synthetic chemicals (improperly called vitamins) and inorganic iron are added. . . . We not only think these foodstuffs are worthless;  we believe that many of them are positively harmful. . . .  We know that we are a nation of sick people.  Our hospitals are crowded to capacity.  All the metabolic diseases are increasing by leaps and bounds.  Coronary thrombosis is attacking young men in their twenties.  Cancer is the leading cause of death in children under 14.  Diabetes and mental disease are on the increase even in children.  And dental cavities are rampant!'  Since my two boys refuse to eat any but white bread, I am, naturally, terribly concerned.  Is there any connection between white bread and all these diseases? . . . A.  These scare tactics are typical of the food-

faddist organizations. The name 'Boston Nutrition Society' sounds good, but if you were to telephone them, you would discover, as we did, that the phone number is the same as for the Copley Square Diet Shop, purveyors of so-called 'health foods.' The faddists want you to believe that the food industry is forcing white bread down the throats of the American public. However, for centuries the majority of mankind has preferred white bread. It is still the overwhelming favorite. Despite the efforts to 'sell' whole wheat flour, the sale of dark flours has remained essentially the same, about two to three per cent of the total flour output. From a practical viewpoint in most American diets, *dark flour and enriched white flour are the same in food value,* and they both make important contributions to our diet. To imply or suggest that enriched white flour can cause or contribute to the diseases listed in the clipping is a cruel and reckless fraud. The Food and Drug Administration of the Federal Government is an eternal watchdog safeguarding the food you eat. Moreover, the legitimate food industries contribute millions of dollars to research in their own laboratories and to a lesser extent grants and aids to universities. Many large food concerns publish some of our best nutrition education."

The plaintiff alleged that by causing this statement to be published, without right or privilege, "[t]he defendant thereby falsely and maliciously suggested and intended to suggest . . . that the plaintiff . . . was not an honorable, truthful . . . organization, but was . . . perpetrating a cruel and reckless fraud"; that "the plaintiff's motive in using the telephone number of the Copley Square Diet Shop was sinister and corrupt and for the purpose of defrauding the public"; that the "plaintiff was a 'food-faddist organization' comprised of 'faddists' (connoting insincere, odd, uninformed, reckless eccentrics) who are trying to mislead and impose a 'cruel and reckless fraud' upon the American people"; and that "the plaintiff was guilty of using 'scare tactics' instead of educational procedures, all in the performance of its duties."

From an order sustaining a demurrer to the foregoing declaration the plaintiff appeals. G. L. c. 231, § 96. One of the grounds of the demurrer—and the only one that need be considered—is that the matters alleged are insufficient in law to enable the plaintiff to maintain the action.

A demurrer to a declaration in libel cannot be sustained unless the words are not reasonably capable of any defamatory meaning. *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 34, and cases cited. Where the plaintiff is a natural person "[t]he test is whether, in the circumstances, the writing discredits the plaintiff in the minds of any considerable and respectable class of the community." *Stanton* v. *Sentinel Printing Co.* 324 Mass. 13, 14. With respect to a corporation not organized for profit which depends on the financial support of the public "[o]ne who falsely, and without a privilege to do so, publishes . . . matter which tends to prejudice it in public estimation and thereby to interfere with the conduct of its activities is liable to the corporation." Restatement: Torts, § 561 (2), and comment on subsection (2). Our law is in accord with this principle. *Finnish Temperance Soc. Sovittaja* v. *Finnish Socialistic Publishing Co.* 238 Mass. 345, 354–355.

The plaintiff, in its declaration, stresses as defamatory the following portions of the article: (1) the suggestion that the plaintiff used "scare tactics," (2) the suggestion that the plaintiff was a "food-faddist organization," (3) the implication that the plaintiff's claims concerning the evils of white bread were a "cruel and reckless fraud," and (4) the statement that the plaintiff's telephone number was the same as that of the Copley Square Diet Shop.

We are of the opinion that the demurrer should not have been sustained. It cannot be said as matter of law that two of these statements or suggestions would not "prejudice . . . [the plaintiff] in public estimation and thereby . . . interfere with the conduct of its activities." Restatement: Torts, § 561 (2). A jury could find that it was defamatory to charge the plaintiff with "cruel and reckless fraud" in connection with its campaign against white flour.

When read with the words about fraud, a similar finding could be based upon the statement about the diet food shop. See *Finnish Temperance Soc. Sovittaja* v. *Finnish Socialistic Publishing Co.* 238 Mass. 345. And it cannot be said that, as matter of law, any of the charges lacked the necessary reference to the plaintiff. See *Ellis* v. *Brockton Publishing Co.* 198 Mass. 538, 541. Compare *Rawson* v. *Arlington Advocate, Inc.* 336 Mass. 31, 33–34.

We are not unmindful of the fact that questions relating to public health and nutrition are of public concern. It would be difficult to imagine anything more so. See *Hubbard* v. *Allyn,* 200 Mass. 166; *Hartmann* v. *Boston Herald-Traveler Corp.* 323 Mass. 56, 61–63; *Sheehan* v. *Tobin,* 326 Mass. 185, 189–191; *Krebiozen Research Foundation* v. *Beacon Press, Inc.* 334 Mass. 86, 94–95. But the qualified privilege of fair comment upon a matter of public interest is a matter of defence, ordinarily not open on demurrer. *Robinson* v. *Coulter,* 215 Mass. 566, 571; *Ingalls* v. *Hastings & Sons Publishing Co.* 304 Mass. 31, 34–35; *Muchnick* v. *Post Publishing Co.* 332 Mass. 304, 308. Compare *Poland* v. *Post Publishing Co.* 330 Mass. 701, 704. And it is to be noted that the publication was alleged to be malicious which, if proved, would destroy the privilege. *Robinson* v. *Coulter,* 215 Mass. 566, 571.[1]

The other grounds for demurrer have been considered. It is enough to say that none of them possesses sufficient merit to justify the sustaining of the demurrer.

*Order sustaining demurrer reversed.*

---

[1] The malice, of course, must be "actual or express malice or malice in fact." *Bander* v. *Metropolitan Life Ins. Co.* 313 Mass. 337, 343–344.