The **NATIONAL NUTRITIONAL FOODS ASSOCIATION and Solgar Co., Inc., Plaintiffs,**

v.

Alexander M. **SCHMIDT, Commissioner of Food and Drugs, and Caspar W. Weinberger, Secretary of Health, Education and Welfare, Defendants.**

No. 73 Civ. 3739 (MIG).

United States District Court, S. D. New York.

Nov. 15, 1973.

Bass & Ullman, New York City, for plaintiffs.

Paul J. Curran, U. S. Atty., S. D. N. Y., for defendants; Samuel J. Wilson, Asst. U. S. Atty., Joanne S. Sisk, Chief App. and Sp. Proceedings, Dept. of Health, Educ. & Welfare, Stephen H. Mc-Namara, Howard M. Holstein, Attys., Office of Gen. Counsel, Dept. of Health, Education and Welfare, of counsel.

GURFEIN, District Judge:

The defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on the grounds that the Court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted. Alternatively, the defendants seek a protective order vacating the notice of deposition which the plaintiffs have issued to the defendant Alexander M. Schmidt, Commissioner of Food and Drugs and for a direction that such discovery not be had.

The plaintiff National Nutritional Foods Association ("National") is composed of business concerns located in New York State and throughout the United States and includes manufacturers, wholesalers, and retailers of vitamins and dietary supplements. Plaintiff Solgar Co. Inc. ("Solgar"), a member of National, is a New York corporation with its principal place of business in Manhattan and engages in the manufacture, distribution and sale in interstate commerce of vitamins and dietary supplements.

The defendant Casper W. Weinberger is Secretary of Health, Education and

Welfare ("Secretary") and is authorized to issue regulations pursuant to 21 U.S.C. § 371 under the Federal Food, Drug and Cosmetic Act. The defendant Alexander M. Schmidt is Commissioner of Food and Drugs ("Commissioner"), to whom the Secretary has delegated his authority to promulgate such regulations.

National and Solgar have filed a complaint, 73 Civ. 3739, seeking (a) preliminary and permanent injunctions enjoining and restraining the defendants from enforcing certain regulations relating to the labeling and content of dietary supplements and (b) a mandatory injunction directing the Commissioner "to properly consider, review and evaluate the record before him" in connection with the regulations described and "to publish his findings of fact and conclusions of law."

Federal jurisdiction is found under 28 U.S.C. §§ 1331(a) and 1337. The matter in controversy arises under the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 301 et seq. and also the Administrative Procedure Act, 5 U.S.C. § 551 et seq. The complaint alleges that this action is authorized by 5 U.S.C. §§ 702–706. Venue purportedly lies here by virtue of 28 U.S.C. § 1391(e)4.

The complaint attacks the promulgation by the Commissioner of certain portions of the Dietary Supplement Regulations which were published in 38 Fed. Reg. 20708–20718, 20730–20740 (1973). The plaintiffs allege that the promulgation was not in accordance with the requisite procedural requirements.

## FACTS: *Procedural History of the Challenged Regulations*

The parties agree about most of the essential facts. The regulatory scheme here attacked finds its inception with a notice of proposed rule-making published in 27 Fed.Reg. 5815 (1962). Numerous comments were received in response to this notice. In June 1966, orders were subsequently promulgated establishing definitions and standards of identity for dietary supplements of vitamins and minerals and revising the regulations for labeling of food for special dietary uses. 31 Fed.Reg. 8521 et seq. (1966). Objections to these orders and requests for a public hearing were filed. After issuing a stay of the effective date of the June 1966 order (31 Fed.Reg. 15730 (1966)) public hearings commenced on June 20, 1968 and concluded nearly two years later on May 14, 1970. The transcript of the hearings comprises over 32,000 pages of testimony plus additional thousands of pages of documentary exhibits.

The hearing examiner who presided over the two years of hearings submitted his report to the Commissioner on January 25, 1971.

On January 19, 1973 the Commissioner—who was then Charles C. Edwards—published proposed findings of fact, proposed conclusions of law and tentative orders. 38 Fed.Reg. 2143–2150 and 38 Fed.Reg. 2152–2162. These orders permitted those who appeared at the hearing to file written exceptions within 60 days, which was subsequently extended to April 20, 1973. (38 Fed.Reg. 6396 (1973)). Exceptions to the orders and findings were filed by 35 persons who had appeared at the hearing, consisting of over 1,000 pages, and approximately 20,000 additional letters.

Shortly before the expiration date for exceptions to be filed, Commissioner Edwards resigned his position on April 6, 1973.

On July 12, 1973 the defendant Schmidt was sworn in as Commissioner of Food and Drugs. On August 2, 1973 the final findings of fact, conclusions of law and orders were published in the Federal Register, 38 Fed.Reg. 20768–20718, 20730–20740 (1973). Included in the August 2 promulgation was the Commissioner's statement:

"Having considered the evidence received at the hearing, the hearing examiner's report, and all the exceptions and written arguments which were filed, the Commissioner, pursuant to

the Federal Food, Drug, and Cosmetic Act (secs. 201(n), 401, 403(a) and (j), 701(a) and (e), 52 Stat. 1046, 1048, 1055, 1056, as amended by 70 Stat. 919; 21 U.S.C. 321(n), 341, 343(a) and (j), 371(a) and (e)) and under authority delegated to him (21 CFR 2.120), issues the following Findings of Fact, Conclusions, and Final Order. . . ." (38 Fed.Reg. 20712, 20734)

The regulations at issue are complex, technical and interrelated but for purposes of this motion it is only necessary to summarize their purpose and effect.*

The two groups of regulations involved here, Part 80 and Part 125 of 21 CFR, provide for labeling which will identify the nature of the product being purchased and its nutritional value. These regulations are part of a coordinated package of 19 regulations, proposals, and policy directives designed to govern the definition, identity, formulation and promotion of vitamin and mineral products.

Pursuant to 21 U.S.C. § 341, the regulations of Part 80 establish definitions and standards of identity for dietary supplements of vitamins and minerals and for vitamin and mineral foods. These regulations, under statutory authority to issue such regulations as will promote honesty and fair dealing in the interest of consumers, are designed to facilitate consumer understanding as to the composition of vitamin and mineral products which are represented to be of special dietary use to supplement the diet by increasing the dietary intake of vitamins or minerals or both.

The new provisions of Part 125, pursuant to authority granted in 21 U.S.C. § 343(j), revised the regulations governing the labeling of food for special dietary uses. Section 343(j) deems a food to be misbranded if it purports to be or is represented for special dietary uses, unless its label supplies information nec-essary to inform purchasers as to its value for such uses. Due to the complexity of conventional food supply the regulation requires the labeling of a food for special dietary use to indicate clearly to the consumer the ingredients of significant value and need in human nutrition and the proportion of such ingredients. This indication is to be achieved through the use of a simplified unit of measurement—the Recommended Daily Allowance (RDA).

Briefly summarized, the purpose and effect of these two regulations is to require full and honest labeling and the fair promotion of vitamin and mineral products as the basis for a more informed consumer choice, while leaving the basic responsibility for deciding personal nutritional practices to the consumer himself. The regulations define the term "special dietary use." They establish the U.S. Recommended Daily Allowance (U.S. RDA) to replace the former Minimum Daily Requirement (M.D.R.) as the official measurement of nutritional intake. They specify the U. S. RDA for various vitamins and minerals for infants, children under four years of age, adults and children over four years of age, and pregnant or lactating women. The regulations draw a distinction between ordinary food, special dietary foods intended for diet supplementation, and drugs intended for the treatment of disease.

The plaintiffs contend that it was physically impossible for the Commissioner to have reviewed and considered the record prior to signing the Dietary Supplement Regulations into effect, and that the Commissioner did not act and could not have acted in the exercise of considered independent judgment when he promulgated these regulations. The plaintiffs point to the fact that the Commissioner signed the Dietary Supplement Regulations only thirteen (13) days after his appointment, although the

---

* The Commissioner recently ordered a stay of the effective date for ordering new labeling pending the outcome of judicial review.

The effective date for the use of new labeling remains December 31, 1974. 38 Fed. Reg. 29577 (Oct. 26, 1973)

matter had been under agency consideration for eleven years and the record consisted of 32,000 pages of transcript plus thousands of pages of documentary exhibits. Moreover, during that same period the Commissioner signed and caused to be published at least 33 items comprising 14 final regulations, 13 proposed regulations and six notices (including the two final orders at issue here).

## MOTION TO DISMISS

The defendants move to dismiss pursuant to Fed.R. Civ.P. 12(b)(6) and 12(b)(1) on the grounds that the complaint does not state a claim upon which relief can be granted and because this court lacks jurisdiction.

■■ The defendants argue that the plaintiff's sole recourse for review of the orders promulgating the Dietary Regulations is. on review by a Circuit Court of Appeals. Before we can consider the merits, we must first determine whether the District Court has jurisdiction in this situation, or whether jurisdiction is exclusive in the Court of Appeals under 21 U.S.C. § 371(f). There is no doubt that the Dietary Regulations here challenged were promulgated pursuant to 21 U.S.C. § 371(e). Review of § 371(e) orders is generally in the Court of Appeals, pursuant to § 371(f)(1), and is subject to the "substantial evidence" criterion of § 371(f)(3). If the action was taken by the Commissioner outside of the requirements of Section 371(e)—as, for example, where there has been no hearing, the District Court would have jurisdiction. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Such jurisdiction is based on the Administrative Procedure Act § 10 (5 U.S.C. §§ 702–706), and on the saving clause of the Food and Drug Act as construed in *Abbott*, supra. Section 371(f)(6) itself provides: "The remedies provided for in this subsection shall be in addition to and not in substitution for any other remedies provided by law."

The attack here is on "the validity" of the regulations, but the specific ground of attack is an alleged failure to comply with the procedural requirement of personal consideration of the evidence by the Commissioner himself. Since the attack is not upon the record made, but on whether the Commissioner read it, the appellate review provided in § 371(f)(1) is said to be inadequate. It is contended by the plaintiffs that the Court of Appeals, reviewing under § 371(f)(1), would be limited to the record as made. They contend further that if the plaintiffs wish to adduce additional evidence before the Court of Appeals, that court would be limited, under Section 371(f)(2) "[to] order such additional evidence to be taken before the Secretary"—which in this case, it is said, would be self-defeating.

We may note also that the former Section 10(b) of the Administrative Procedure Act, now 5 U.S.C. § 703 provides in pertinent part:

> "The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, *in the absence or inadequacy thereof*, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. . . ." (Emphasis supplied).

■ The real issue of jurisdiction is whether the review procedure in the Court of Appeals would be "inadequate." There is a dearth of authority directly on the point.

It should be noted that the issue presented in *Abbott*, supra, was not whether jurisdiction was in the Court of Appeals or the District Court, but whether, if it was not in the District Court, there was any judicial review whatever. *Abbott* is, therefore, not of direct aid.

The type of procedural attack here launched has actually been the subject of

review by a distinguished Court of Appeals. In Braniff Airways, Inc. v. C.A.B., 126 U.S.App.D.C. 399, 379 F.2d 453 (1967), on a statutory review of a CAB order in an adjudicatory proceeding, the Court of Appeals reviewed claims that 1. there was no quorum of the Board present on the critical dates; 2. the order was not valid because it did not become "effective" until after a Board member had resigned; and 3. the "notation practice," under which the views and votes of the members are recorded separately, rather than in joint session, and circulated to the remaining members was invalid. The Court was able to determine all these procedural matters on the merits. And I see no distinction in this regard between the review of an adjudicatory determination by an agency and the review of the promulgation of a regulation after a hearing.

The only thing that gives me pause with respect to the "adequacy" of Court of Appeals review is Judge Friendly's comment, in another context, that "a district court may be in a better position than a court of appeals to carry out fact finding." See Toilet Goods Ass'n v. Gardner, 360 F.2d 677, 684, n. 8 (2 Cir. 1966), aff'd, 387 U.S. 158, 167, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967).

I do not believe, however, that fact finding will be required here. If the Court of Appeals should hold that the plaintiffs are entitled to make a case on the facts relating to the Commissioner's procedures,. it can appoint a Special Master under its equity powers. See generally, Polish National Alliance of the United States of North America v. N.L.R.B., 159 F.2d 38 (7 Cir. 1946); N.L.R.B. v. Remington Rand, Inc., 130 F.2d 919 (2 Cir. 1942); N.L.R.B. v. Arcade-Sunshine Co., 76 U.S.App.D.C. 312, 132 F.2d 8 (D.C.Cir. 1942); Olson Rug Co. v. N.L.R.B., 304 F.2d 710 (7 Cir. 1962).

If the Court of Appeals should require no further "facts," it can issue a mandatory injunction to the Commissioner to review and evaluate the record, as the plaintiff prays. See Twin City Milk Producers Ass'n v. McNutt, 122 F.2d 564 (8 Cir. 1941).

■■ If, as I think more likely, the court should hold, as a matter of law, that the plaintiffs have no right to go behind the Commissioner's affirmative finding, that would dispose of the matter.[1]

I cannot find, therefore, that review by the Court of Appeals in this matter would be "inadequate." I, therefore, hold that since the determination was made under § 371(e), review may be had only under § 371(f), by a Court of Appeals.

The complaint is accordingly dismissed.

1. While under proper circumstances an allegation of failure to comply with proper procedures may constitute a valid due process claim, cf. R. H. Macy & Co. v. Tinley, 249 F.Supp. 778, 782 (D.C.1966), the mere suppositional allegation made here does not, in my opinion, state such a claim. See Twin City Milk Producers Ass'n v. McNutt, 122 F.2d 564, 569 (8 Cir. 1941). The Commissioner's actions are clothed in a presumption of regularity. Braniff Airways, Inc., supra; Willapoint Oysters v. Ewing, 174 F.2d 676, 696 (9 Cir.), cert. denied, 338 U.S. 860 (1950). And the Commissioner should not be subjected to direct questioning on the manner or extent of his study of the record. See Morgan v. United States, 313 U.S. 409, 421–22 (1941). This case is unlike United States ex rel. Shaughnessy v. Accardi, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), where there was a finding of sufficient allegation of undue influence by the Attorney General on the Board of Immigration Appeals; see 379 U.S. 280, 282 (1955).