**AJAY NUTRITION FOODS, INC., d/b/a
Dave's Diet and Nutrition Foods,
et al., Plaintiffs,**

v.

**FOOD AND DRUG ADMINISTRATION,
Department of Health, Education and
Welfare, et al., Defendants.**

Civ. A. No. 328–73.

United States District Court,
D. New Jersey.

April 5, 1974.

Bass & Ullman, New York City, by
David Ficksman (New York bar), Henry L. Gurshman, Metuchen, N. J., for
plaintiffs.

Herbert J. Stern, U. S. Atty., Newark,
N. J., by William J. Hunt, Asst. U. S.
Atty., for defendants.

## OPINION

COOLAHAN, District Judge.

This is an action against the Food and Drug Administration (FDA), its Commissioner,[1] and the Secretary of Health, Education and Welfare, brought as a class action[2] by the corporate plaintiffs, who are engaged in the sale and distribution of health food products and who are members of the National Nutritional Foods Association. Plaintiffs sue to enjoin defendants from issuing certain press releases and public announcements that are alleged to be damaging to their businesses, and ask the Court to award damages totaling $500 million. Defendants have brought the instant motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The action centers on events contemporaneous with publication by the FDA of regulations affecting the health food "industry." The procedural history of these regulations has a bearing on this action. As summarized by Judge Gurfein in National Nutritional Foods Ass'n v. Schmidt, 367 F.Supp. 889 (S.D.N.Y. 1973):

> The regulatory scheme . . . finds its inception with a notice of proposed rule-making published in 27 Fed.Reg. 5815 (1962). Numerous comments were received in response to this notice. In June 1966, orders were subsequently promulgated establishing definitions and standards of identity for dietary supplements of vitamins and minerals and revising the regulations for labeling of food for special dietary uses. 31 Fed.Reg. 8521 et seq. (1966). Objections to these orders and requests for a public

hearing were filed. After issuing a stay of the effective date of the June 1966 order (31 Fed.Reg. 15730 (1966)) public hearings commenced on June 20, 1968 and concluded nearly two years later on May 14, 1970. The transcript of the hearings comprises over 32,000 pages of testimony plus additional thousands of pages of documentary exhibits.

The hearing examiner who presided over the two years of hearings submitted his report to the Commissioner on January 25, 1971.

On January 19, 1973 the Commissioner . . . published proposed findings of fact, proposed conclusions of law and tentative orders. 38 Fed. Reg. 2143–2150 and 38 Fed.Reg. 2152–2162. These orders permitted those who appeared at the hearing to file written exceptions within 60 days which was subsequently extended to April 20, 1973. (38 Fed.Reg. 6396 (1973)). Exceptions to the orders and findings were filed by 35 persons who had appeared at the hearing, consisting of over 1,000 pages, and approximately 20,000 additional letters . . . .

. . . On August 2, 1973 the final findings of fact, conclusions of law and orders were published in the Federal Register, 38 Fed.Reg. 20768–20718, 20730–20740 (1973). Included in the August 2 promulgation was the Commissioner's statement:

> "Having considered the evidence received at the hearing, the hearing examiner's report, and all the exceptions and written arguments which were filed, the Commissioner, pursuant to the Federal Food, Drug,

---

1. On April 6, 1973 defendant Edwards resigned his position and on July 12, 1973, before some of the events giving rise to this complaint, Alexander Schmidt became the FDA Commissioner. It is unnecessary to discuss any procedural issues which may arise from this fact.

2. The Court need not here determine whether this matter is brought properly as a class

action under Rule 23 of the Federal Rules of Civil Procedure. Any injunctive relief this Court would issue would as a matter of course inure to other members of the class. Insofar as the money damages are concerned, the discussion which follows on the issue of subject matter jurisdiction renders moot any Rule 23 issues.

and Cosmetic Act (secs. 201(n), 401, 403(a) and (j), 701(a) and (e), 52 Stat. 1046, 1048, 1055, 1056, as amended by 70 Stat. 919; 21 U. S.C. 321(n), 341, 343(a) and (j), 371(a) and (e)) and under authority delegated to him (21 CFR 2.120), issues the following Findings of Fact, Conclusions, and Final Order . . . ." (38 Fed.Reg. 20712, 20734)

It is not contested by any of the parties that the regulations did not at the inception of this action, and do not as yet, have the force of law.[3] Petitions to review the regulations were filed in United States Courts of Appeals for three Circuits[4] and are now consolidated, under 28 U.S.C. § 2112(a), before the Second Circuit. See National Nutritional Foods Ass'n v. FDA, 491 F.2d 1141 (2d Cir. 1974).

Specifically, plaintiffs state that certain "press releases, public announcements and other communications" issued by the FDA "have resulted in the deprivation of property without due process of law and the wrongful and unlawful interference with the rights of the plaintiffs and the other members of the class to carry on a business." Plaintiffs allege that the class has been referred to as "nutrition quacks," "food faddists," "health quacks," and that the products that are produced have been referred to as "shotgun mixtures." Further, plaintiffs claim that the FDA has sought to discredit certain fastly held tenets of health food enthusiasts.[5] Lastly, plaintiffs allege that the FDA statements "are knowingly and maliciously false and untrue and not justified by any fair balance of competing social interests . . . [they are] not factual, but rather represent character attacks by the defendants."

## I. JURISDICTION

A. The Administrative Procedure Act, 5 U.S.C. § 701 et seq.

Plaintiffs argue that Section 10(a) of the Administrative Procedure Act (APA), 5 U.S.C. § 702, confers jurisdiction in this matter. That section provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

Defendants argue that the Administrative Procedure Act does not *confer* jurisdiction not otherwise existing and, in any event, this suit is in actuality one against the United States, which has not consented to be sued. Larson v. Domestic & Foreign Commerce Co., 337 U.S. 682, 688, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952); Dalehite v. United States, 346 U.S. 15, 30, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

---

3. The Government points out that exceptions to the "tentative orders" have been invited. 38 Fed.Reg. at 2150, 2162. Thus, the administrative stage is not yet complete. Chicago & Southern Air Lines v. Waterman S. S. Co., 333 U.S. 103, 112–113, 68 S.Ct. 431, 92 L.Ed. 568 (1948).

4. District of Columbia Circuit, Second Circuit, and Ninth Circuit.

5. As expressed in the complaint these include:
(a) A product, because of the presence or absence of certain vitamins and/or minerals, is adequate or effective in the prevention, cure, mitigation, or treatment of any disease or symptom.
(b) A diet of ordinary foods cannot supply adequate amounts of nutrients.

(c) The lack of optimum nutritive quality of a food, by reason of the soil on which that food is grown, is or may be responsible for an inadequacy or deficiency in the daily diet.
(d) The storage, transportation, processing, or cooking of a food is or may be responsible for an inadequacy or deficiency in the quality of diets.
(e) A dietary supplement contains ingredients other than those specifically allowed by the Commissioner.
(f) A natural vitamin in a food is superior to an added or synthetic vitamin. . . . [T]here is a difference between vitamins naturally present and those that have been added.

Whether or not the APA is jurisdiction-conferring has been an issue presented to several of the federal Circuits, and is a source of controversy among commentators.[6]

█ The first question to be confronted is whether section 10 of the APA, 5 U.S.C. § 701(a)(2) precludes judicial review of possible abuses of agency discretion as long as the agency is given general discretion in an area. The section provides:

> This chapter applies . . . except to the extent that—. . . (2) agency action is committed to agency discretion by law.

On its face the language strongly limits review. The contrary argument, that the purpose of the APA as a whole would be largely defeated unless courts may scrutinize agency actions for abuse of discretion, is also very strong.[7]

These contrasting views are discussed in Littell v. Morton, 445 F.2d 1207, 1210–1211 (4th Cir. 1971), where it is held, following the rationale of Wong Wing Hang v. Immigration and Naturalization Service, 360 F.2d 715, 719 (2d Cir. 1966), that

> [T]he APA provides limited judicial review to determine if there was an abuse of [agency] discretion . . . [T]he Secretary's decision here would be an abuse of discretion "if it were made without a rational explanation, inexplicably departed from established policies, or rested . . . on other 'considerations that Congress could not have intended to make relevant.' "

This Court holds, after review of Zimmerman v. United States Government, 422 F.2d 326 (3d Cir.), cert. denied, 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970), that the law of this Circuit conforms to that of the Second and Fourth Circuits on this threshold issue. In that case, certain patentees, employees of the United States Government, asked a United States District Court to review a determination by the Commissioner of Patents that the Government was entitled to royalty-free licenses in patentee's inventions. In discussing the question whether *any* statute may "exclude all occasions of judicial intervention" in respect to actions of administrative officers, the court endorsed an observation of Professor Jaffee[8]—a leading proponent of the view that the APA does not, on its own terms, exclude judicial review of agency actions[9]—to the effect that even a statute providing that an "administrative determination shall be 'final'," "should not be interpreted to exclude judicial question of the agency's 'jurisdiction'." 422 F.2d at 330. Though this language in *Zimmerman* is not specifically focused on the APA, 5 U.S.C. § 701(a)(2) certainly cannot be viewed as stronger than a statute providing that an administrative determination is "final." Thus, the clear implication of this language in *Zimmerman* is that the APA *by itself* does not preclude review of administrative determinations in areas under general agency discretion.[10]

█ The *Zimmerman* case makes it clear, however, that the APA is itself

---

6. See the comprehensive discussion in Littell v. Morton, 445 F.2d 1207, 1210–1214 (4th Cir. 1971).

7. Persons advocating this position point to another APA section, 5 U.S.C. § 706, which provides:

> The reviewing court shall—. . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;

> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law. . . .

8. L. Jaffee, Judicial Control of Administrative Actions 153–54 (Abridged Student Ed. 1965).

9. See Littell v. Morton, *supra* 445 F.2d at 1211.

10. Also see Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), discussed at n. 13 *infra*.

not jurisdiction-conferring. 422 F.2d at 330.[11] *Zimmerman* also states that any argument for the exercise of jurisdiction pursuant to the APA gives way to a defense of sovereign immunity:

> The present action is against the United States and is a suit to which the Government has not consented. Congress has provided an exclusive and adequate remedy in the Court of Claims.

422 F.2d at 331–332.

■ As the foregoing passage indicates, the court held in *Zimmerman* that the Court of Claims, under a statute specifically granting jurisdiction to it [12] —and not the District Court pursuant to the APA—was the proper forum to which the *Zimmerman* plaintiffs could turn. It is thus clear under the doctrine of sovereign immunity. Larson v. Domestic & Foreign Commerce Co., *supra*; Dalehite v. United States, *supra*; Blackmar v. Guerre, *supra*, and under *Zimmerman*, that this Court has no jurisdiction over the FDA or the Department of Health, Education and Welfare in this action.[13] In a practical sense such lack of jurisdiction is fatal to the plaintiffs' claim for monetary relief since it cannot reasonably be contested that plaintiffs' request for $500 million in damages can be procured only from the United States Treasury rather than

---

11. Also see Getty Oil Co. (Eastern Operations) v. Ruckelshaus, 467 F.2d 349 (3d Cir.), cert. denied, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973); Richardson v. United States, 465 F.2d 844, 849 n. 2 (3d Cir. 1972), cert. denied, 410 U.S. 955, 93 S. Ct. 1420, 35 L.Ed.2d 688 (1973).

12. 28 U.S.C. § 1498. It is doubtful that a special jurisdiction-conferring statute, the Federal Tort Claims Act, 28 U.S.C. § 1346(b), could have been of assistance to the plaintiffs here. That Act, at 28 U.S.C. § 2680(h), specifically precludes suits brought under

> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

The Third Circuit recently, in Quinones v. United States, 492 F.2d 1269 (3d Cir. 1974), held that failure on the part of the Bureau of Narcotics to maintain complete and accurate employment records, which failure was detrimental to the reputation of the *Quinones* plaintiff, could be classified under Pennsylvania law as a tort of negligence rather than one of defamation. Thus § 2680(h) was circumvented in *Quinones*, but it is doubtful that the *Quinones* doctrine could be invoked by the plaintiffs here. The instant complaint is clearly grounded on a libel and not a negligence theory.

13. The limits on judicial review which were the hallmark of *Zimmerman* have been thrown into question by the United States Supreme Court in Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S. Ct. 814, 28 L.Ed.2d 136 (1971). There, the Court held that a determination by the Secretary of Transportation that no feasible route for a proposed federal highway could avoid some encroachment on a public park was judicially reviewable despite the fact that no statute provided specifically for such review. The Court, in effect, held that the Administrative Procedure Act points the way to an exercise of general jurisdiction by the District Court, absent an indication from Congress that there should be no judicial review:

> [The APA] provides that the action of "each authority of the Government of the United States," which includes the Department of Transportation, is subject to judicial review except where there is a statutory prohibition on review or where "agency action is committed to agency discretion by law." In this case, there is no indication that Congress sought to prohibit judicial review and there is most certainly no "showing of 'clear and convincing evidence' of a . . . legislative intent" to restrict access to judicial review.
>
> . . .
>
> Similarly, the Secretary's decision here does not fall within the exception for action "committed to agency discretion." This is a very narrow exception. . . . The legislative history of the Administrative Procedure Act indicates that it is applicable in those rare instances where "statutes are drawn in such broad terms that in a given case there is no law to apply." [The case was remanded to the district court for a finding on the merits.]

401 U.S. at 410, 91 S.Ct. at 820. *Overton Park* does not, however, require the Court to disregard *Zimmerman* in respect to the sovereign immunity issue. *Overton Park* involved a suit for injunctive relief against an executive officer individually. It did not involve the sovereign and did not contain a claim for money damages.

from the Secretary or the Director. See Dugan v. Rank, 372 U.S. 609, 620, 83 S. Ct. 999, 10 L.Ed.2d 15 (1963). The question is still open, however, whether the suit against the Secretary and the Director as individuals, seeking an injunction against their alleged abuse of discretion, may properly be brought in this forum under federal law. See Malone v. Bowdoin, 369 U.S. 643, 647, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); Dugan v. Rank, *supra*; Larson v. Domestic & Foreign Commerce Co., *supra*.

B. Jurisdiction pursuant to 28 U.S.C. § 1331 [14]

■ In their allegation that this Court has jurisdiction in this matter, plaintiffs call attention to 28 U.S.C. § 1331. That section provides:

> The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

The crucial phrase "arises under" has required interpretation in many cases. In the words of Professor Wright:

> Though the meaning of this phrase has attracted the interest of such giants of the bench as Marshall, Waite, Bradley, the first Harlan, Holmes, Cardozo, and Frankfurter,

and has been the subject of voluminous scholarly writing, it cannot be said that any clear test has yet been developed to determine which cases "arise under" the Constitution, laws, or treaties of the United States.

Wright, Federal Courts 54–55 (2d ed.). But the task of this Court in deciding the instant motion is not so difficult. The Supreme Court has held clearly that the traditional equity powers of the judiciary extend to suits to compel individual administrative officers to refrain from acts that overstep their authority. See in general Larson v. Domestic & Foreign Corp., 337 U.S. 682, 697–702, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Accordingly, jurisdiction was held to exist in a suit against the commander of a naval shipyard to restrain the commander from issuing statements critical of certain employees, Howard v. Lyons, 360 U.S. 593, 597, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959); where an investigator for a congressional committee was sued for abuse of process, Wheeldin v. Wheeler, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); and where agents of the Federal Bureau of Investigation were sued for conducting a search in violation of the Fourth and Fifth Amendments, Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570 (1912), establishes

---

14. The Court must deal with the question of jurisdiction irrespective of the decision on the merits. In Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), it is said:

> Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.

Also see Lewis v. American Federation of State, County & Municipal Employees, 407 F.2d 1185 (3d Cir.), cert. denied, 396 U.S. 866, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969), where the Court held that it had jurisdiction despite its subsequent decision that the complaint did not have merit.

Plaintiff has included in its complaint an averment that this Court retains jurisdiction in this action pursuant to diversity of citizenship, 28 U.S.C. § 1332. Plaintiff's theory is evidently that the plaintiff may sue the Secretary and Director since they are located in different States from the plaintiff, the District of Columbia being deemed a State for diversity purposes. National Mut. Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949). The law is clear, however, that an officer of the executive branch of Government may not be sued on a diversity of citizenship basis on any action arising out of the officer's conduct of office. See Walters v. Payne, 292 F. 124 (3d Cir.), cert. denied, 263 U.S. 715, 44 S.Ct. 136, 68 L.Ed. 521 (1923); Schroeder v. Davis, 32 F.2d 454, 456 (8th Cir. 1929); Hancock v. Hardin, 326 F.Supp. 988, 990–991 (D.Md.1971). Also see Butterworth v. Hill, 114 U.S. 128, 132, 5 S.Ct. 796, 29 L.Ed. 119 (1885).

that a property owner could sue a federal officer to forbid him from putting illegal restrictions on the use of the property. In School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90 (1902), the property right held to be protected was the reputation of a business where a United States Postmaster refused to deliver mail to a business managed by faith healers. And the Court of Appeals in this Circuit has recently enjoined military officials from preventing political candidates from distributing campaign literature on premises of the Fort Dix Military Reservation. Spock v. David, 469 F.2d 1047 (3d Cir. 1972).

■ Because of this much invoked doctrine the Court will grant defendant's motion to dismiss in respect to the Department of Health, Education and Welfare and the FDA, but the Court holds it has jurisdiction under 28 U.S.C. § 1331 in the action against the individual defendants for equitable relief. It should be pointed out that defendants have not contested the fact that the Court has such jurisdiction.

## II.  MERITS OF THE CASE

### A.  The Privilege Doctrine

■ The Government bases its motion to dismiss on the privilege accorded under law to executive officers with respect to statements made by them in their official capacities. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), is the leading authority upon which the Government relies. That case involved a statement by the Acting Director of the Office of Rent Stabilization, through a press release, announcing his intention to suspend certain employees of the office who had participated in formulating a plan entailing the use of agency funds. The employees sued "charging that the press release, in itself and as coupled with the contemporaneous news reports of senatorial reaction to the plan, defames them to their injury, and alleging that its publication and terms had been actuated

by malice on the part of [defendant]." 360 U.S. at 568, 79 S.Ct. at 1337. In holding that the judicially made privilege in "suits for defamation and kindred torts" for "officers of government" (360 U.S. at 569, 79 S.Ct. at 1338) required a dismissal of the action, Justice Harlan, for the Court, stated (360 U.S. at 571, 79 S.Ct. at 1339):

> It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

The opinion also made it clear that the officer invoking the privilege need not be of cabinet rank (360 U.S. at 573, 79 S.Ct. at 1340):

> It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted—the relation of the act complained of to "matters committed by law to his control or supervision,"  .  .  .  .

And the Court predicated its opinion on the necessity for Government officers to disseminate information to the public (360 U.S. at 574–575, 79 S.Ct. at 1341):

> "The issuance of press releases was standard agency practice, as it has become with many governmental agencies in these times. We think that under these circumstances a publicly expressed statement of the position of the agency head, announcing personnel action which he planned to take in reference to the charges so widely disseminated to the public, was an appropriate exercise of the discretion which an officer of that rank must possess if the public service is to function effectively. It would be an unduly restrictive view of the scope of the duties of a policy-making executive offi-

cial to hold that a public statement of agency policy in respect to matters of wide public interest and concern is not action in the line of duty.

The Government's position is that the Barr v. Matteo doctrine compels a judgment for the defendants in the case at bar. The Government relies heavily upon the fact that the issuance of press releases to the public is a duty of the Commissioner of the FDA that is mandated by Congress. To this effect 21 U.S.C. § 375 provides:

(a) The Secretary shall cause to be published from time to time reports summarizing all judgments, decrees, and court orders which have been rendered under this chapter, including the nature of the charge and the disposition thereof.

(b) The Secretary may also cause to be disseminated information regarding food, drugs, devices, or cosmetics in situations involving, in the opinion of the Secretary, imminent danger to health or gross deception of the consumer. Nothing in this section shall be construed to prohibit the Secretary from collecting, reporting, and illustrating the results of the investigations of the Department.

The Government has, further, cited case law relating to this statutory power. In Kukatush Mining Corp. v. Securities and Exchange Comm'n, 114 U.S.App.D.C. 27, 309 F.2d 647 (1962), it was held—Circuit Judge Burger writing the opinion —that a Canadian corporation could not obtain an injunction against the placing of the names of certain corporations on the S.E.C.'s "Canadian Restricted List," which warned the public to be careful in transactions involving securities issued by the listed companies. The Commission issued the list as "a public press re-

lease available to financial publications and newspapers." 309 F.2d at 650. The Court endorsed the need for this type of communication:

To say, as the Commission does here in its "listing" process, that Kukatush's stock is not eligible to be sold here is simply to state a fact—that the securities have not been registered —which the American public is entitled to know. There is no requirement of a hearing prior to the dissemination of such information.

And the Court found that the Securities Laws, 15 U.S.C. § 78u(a), authorizing the Commission to publish information on violations of the 1934 Act, were "ample" statutory authority for the dissemination of the list. 309 F.2d at 651. This case must be viewed as strongly favoring the Government's position.[15]

The plaintiffs have sought to diminish the legal effect of defendants' § 375 mandate by arguing that "the damage claim is not only based on libel and slander, but . . . is also grounded on the wrongful actions of the defendants which deprived the plaintiffs of property without due process of law and which interfered with their right to seek effective judicial review." (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 6.) The plaintiffs have, in the view of this Court, advanced this argument because of their failure to overcome Barr v. Matteo in respect to plaintiffs' accusations grounded in libel. A due process claim separate from a claim of libel is possible only if plaintiffs are prepared to allege that the statements of the FDA, *even if true,* would be a violation of defendants' executive authority. If this is in fact the plaintiffs' contention, the proper forums for resolution of the

15. Hoxsey Cancer Clinic v. Folsom, 155 F. Supp. 376 (D.D.C.1957), also cited by the Government, involved a suit against the Secretary of Health, Education and Welfare on a due process theory. The plaintiff was a clinic for the treatment of cancer and the FDA disseminated certain statements questioning the safety of the machines and meth- ods used by the plaintiff. Though the court stated that 21 U.S.C. § 375(b) was clearly constitutional and that there need not be a hearing prior to the publication of the statements, the question of privilege in the context of a possible libel action was specifically avoided. See 155 F.Supp. at 378.

issue are the United States Courts of Appeals under the authority of Courts of Appeals to rule on the validity of administrative regulations in an administrative law context.

Plaintiffs further aver that § 375(b) did not afford a mandate to the defendants here "because the type of references to plaintiffs and other members of the class set forth in the complaint can hardly represent the dissemination of . . . information contemplated by Congress. It is submitted that the health food industry, taken as a whole, does not involve gross deception of the consumer nor imminent danger to health." To counter this argument the Government has demonstrated that the press release statements that plaintiffs have found so objectionable stem directly from the published tentative orders.[16] This Court is satisfied that the Government's contentions in respect to this issue are correct; the statements in the press release are consistent with and stem from the same investigations that led to the proposed regulations. A challenge to the press release as broad as that presented by the plaintiffs here is in effect a challenge on the proposed regulations.

■ But, even if the press release were not related to the proposed administrative regulations, the plaintiffs' complaint would still necessitate dismissal. Barr v. Matteo and related cases demonstrate that there need not be a *specific* statutory authorization for the statement of an executive officer in order for a statement to be privileged. The Barr v. Matteo privilege exists as long as a press release constitutes "standard agency practice." Plaintiffs' complaint fails to allege that there has been a deviation from recognized agency practice, unless it can be shown that use of the words "quacks," "faddists," and "shotgun mix-

tures" constitutes a deviation. While the Government contends in its brief that such words were never used (Government's Reply Memorandum at 18), for purposes of this motion the Court must assume those allegations to be true. Doctors, Inc. v. Blue Cross of Greater Philadelphia, 490 F.2d 48, 50 (3d Cir. 1973); Schenley Industries, Inc. v. New Jersey Wine & Spirits Wholesalers Ass'n, 272 F.Supp. 872, 875–876 (D.N.J.1967).

### B. The Strength of the Complaint

■ The Court holds that the alleged "defamation" of the "health food industry" through use by the Government of the terms "quacks," "faddists," and "shotgun mixtures," is not actionable under common law principles even were the Barr v. Matteo doctrine not available to the Government here. While it is true that a corporation may have a cause of action in defamation, Aetna Life Ins. Co. v. Mutual Benefit Health & Acc. Ass'n, 82 F.2d 115 (8 Cir. 1936); Boston Nutrition Society v. Stare, 342 Mass. 439, 173 N.E.2d 812 (1961), this Court holds that an entire industry, such as the health food processing industry, cannot sue on grounds of defamation. In the well known case of Neiman-Marcus v. Lait, 13 F.R.D. 311, 316 (S.D.N.Y.1952), Judge Kaufman stated:

> Where the group or class disparaged is a large one, absent circumstances pointing to a particular plaintiff as the person defamed, no individual member of the group or class has a cause of action. Restatement of Torts, § 564(c); Gatley, Libel and Slander (3d ed. 1938) pp. 123–124. Thus actions for libel have failed where the groups libelled consisted of all *officials* of a statewide union. . . . all the taxicab drivers in Washington, D. C., . . . or the members of a clan. . . .

---

16. For the close correlation between defendants' alleged "attack" on the beliefs of health food enthusiasts, see ¶ 12 of plaintiffs' complaint, quoted at footnote 5, *supra*, and compare it to defendants' tentative order on special dietary foods, Proposed FDA Reg. § 125.2(b)(1)–(6), 38 Fed.Reg. 2150 (1973). See also Proposed FDA Reg. § 80.-1, 38 Fed.Reg. 2160 (1973), and the preamble to the proposed regulations at 38 Fed. Reg. 2154, ¶ 8, in respect to defendants' references to "shotgun mixtures."

The Third Circuit has endorsed the concept that a cause of action in defamation loses its legal foundation as the target of the defamatory statement becomes less specific. Skeoch v. Ottley, 377 F.2d 804, 807 (3d Cir. 1967). See also Lepman v. Everett, 333 F.2d 154 (7th Cir. 1964).

Plaintiffs have cited several cases in which courts have restrained the issuance of press releases by administrative agencies. Silver King Mines, Inc. v. Cohen, 261 F.Supp. 666 (D.Utah 1966); B. C. Morton International Corp. v. Federal Deposit Insurance Corporation, 305 F.2d 692 (1st Cir. 1962); Bristol-Myers Co. v. FTC, 138 U.S.App.D.C. 22, 424 F. 2d 935, cert. denied, 400 U.S. 824, 91 S. Ct. 46, 27 L.Ed.2d 52 (1970); Gilligan, Will & Co. v. SEC, 267 F.2d 461, 468 (2d Cir.), cert. denied, 361 U.S. 896, 80 S.Ct. 200, 4 L.Ed.2d 152 (1959). None of those cases provides grounds for denial of the instant motion. *Silver King Mines* involved a press release issued pursuant to an SEC investigation of a *particular* corporation, prior to any adjudication of the matter in administrative and court proceedings. *Morton* involved a press release which the plaintiff—a nationwide investment business —claimed deliberately misrepresented the application of federal law for the specific purpose of destroying plaintiff's business. The court, in denying the Government's motion to dismiss stated (305 F.2d at 697):

> The record here wholly fails to disclose any concession by plaintiff's counsel that the object of defendant's press release was to eliminate a common type of dealing by many persons, rather than to single out plaintiff as a special target.

*Bristol-Myers* and *Gilligan,* are relevant only in that they contain dicta showing that the Second Circuit might concur with the reasoning of the District of Utah in the *Silver King Mines* case.

In the instant matter there is decidedly no complaint, as there was in *Morton,* that the Government has singled out any party for discriminatory treatment.

Plaintiffs have characterized the Government's actions as a "character attack" upon the health food industry. The use by the plaintiffs of the incongruous phrases "character attack" and "industry" is indicative of the weak legal reasoning underlying this action. Plaintiffs have not complained of discrimination *between corporations* by the FDA. The class involved, in plaintiffs' words, "so numerous that it is impracticable to bring [all members] before the Court" (complaint, ¶ 2), is much too broad to require the protection of a court order, particularly in view of the legitimate function of Government to inform the public of business abuses.

For the foregoing reasons the Government's motion to dismiss should be granted. Counsel may submit an appropriate order.